UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y
★ MAR 17 2009 ★
BROOKLYN OFFICE

----------------------------------------------------------x

KEITH DAVIS,

Petitioner,

-against-

CV 08-4659 (DLI)

JAMES W. WALSH, Superintendent,
Sullivan Correctional Facility,

Respondent.

----------------------------------------------------------x

RESPONDENT'S EXHIBIT F

ORIGINAL COPY

CHARLES J. HYNES
DISTRICT ATTORNEY KINGS COUNTY
RENAISSANCE PLAZA
350 JAY STREET
BROOKLYN, NEW YORK 11201-2908
(718) 250-2000

LEONARD JOBLOVE
HOWARD B. GOODMAN
Assistant District Attorneys
of Counsel

March 2009

Davis v. Walsh

CV 08-4659 (DLI)

RESPONDENT'S EXHIBIT F

Transcript of Jury Selection of April 29, 2004

ORIGINAL COPY

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS - CRIMINAL TERM - PART 23
----------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,

-against-

KEITH DAVIS,

DEFENDANT

----------------------------------------------X

Indictment No. 9148/01
Jury Selection

120 Schermerhorn Street
Brooklyn, New York
April 29, 2004

B E F O R E:

HONORABLE MICHAEL BRENNAN,
Justice

A P P E A R A N C E S:

OFFICE OF CHARLES J. HYNES, ESQ.
DISTRICT ATTORNEY - KINGS COUNTY
For the People
BY: DVORA GOLOWA,
Assistant District Attorney

JONATHAN FINK, ESQ.,
For the Defendant
Brooklyn, New York

ROSANNE TERMAN,
SENIOR COURT REPORTER

THE CLERK: From the trial calendar, number three, indictment 9148 of 2001. Defendant is present.

Counsel, appearances.

MS. GOLOWA: Dvora Golowa, for the Office of the District Attorney.

Good morning.

MR. FINK: Jonathan Fink, 40 Exchange Place, New York, New York.

Good morning, Your Honor.

THE COURT: Good morning.

This is a retrial of this case. Case had been a mistrial in a murder trial when defendant's attorney took ill, so what I'd like to do before we start, we've sent for jurors is do the Sandoval the Antommarchi and the Parker over again since you're new counsel and we have in effect a new trial here.

If you would just explain again the Antommarchi rights and the Parker Warnings to the defendant, then I will inquire of the People what prior bad acts or convictions they intend to cross-examine dependent upon if he chooses to testify at trial.

MR. FINK: Your Honor, excuse me, I just wanted to raise the issue in regard to the other case, the Sean Matthews case, did you get a chance to speak with Judge Walsh.

THE COURT: We called his chambers, we left a message with him. I'll have my law assistant make sure they got the message. We'll tell them that you would be actively engaged here until the end of next week.

MR. FINK: Your Honor, just one issue with regard to Antommarchi. He has indicated that he is willing to waive his Antommarchi rights. Mr. Davis, however, I explained to him in the course of jury selection, he doesn't like that process in terms of myself, the Assistant DA going to the bench with a potential juror where he's not present, if he can change his mind with regard to that?

THE COURT: Yes, that's correct.

Defendant has executed a waiver of right of Parker Warnings and the waiver of the Antommarchi rights subject to change.

People, if defendant should choose to testify on his own behalf in this case, what prior convictions or bad acts do you intend to cross-examine him on?

MS. GOLOWA: Your Honor, if the defendant should choose to testify in this case, the People would seek to cross-examine the defendant with regard to the following convictions as well as the underlying facts therein.

First, with regard to the defendant's 1989

conviction for attempted robbery in the second degree, the underlying facts being that on April 25, 1988 the defendant and two others surrounded the victim in this case on the street, went into his pockets, took money and papers, knocked the complainant to the ground and caused him injury.

The People would further seek to examine the defendant on his conviction of petit larceny on September 22nd, of 1988 and the underlying facts therein being that on June 9, 1988 on the A subway train, the defendant again with other individuals beat the victim in this case and took property from him.

The People would also seek to examine the defendant on his conviction of September 22, 1988 and the underlying facts. I'm sorry the conviction being for attempted criminal possession of stolen property in the fifth degree and the underlying facts being that the defendant was in possession of a stolen car on September 4, 1988.

The People would further seek to cross-examine the defendant on his conviction for robbery in the first degree on August 6, 1991 with regard to an incident that happened on June 9, 1988 on the subway platform at Ralph Avenue where the defendant together with other individuals assaulted the victim with a blunt object

causing him injury and took money from the complainant.

And the People would further seek to cross-examine the defendant on the conviction of July 15, 1991 of criminal possession of a narcotic drug in the fourth degree in which the defendant on May 2, 1990 at and Hancock Tompkins Street, the defendant was in possession of a stolen vehicle in which crack cocaine was recovered.

Your Honor, the defendant has clearly shown with regard to these convictions that he puts his interest above that of society and although many of these, many of the facts in these cases are similar to the facts in this case, the defendant should not be able to use the similarities as a shield, if he makes this kind of robbery crime his crime of choice.

Additionally with regard to the age of the case, as I would just point out to the Court, that although these cases are from mostly 1988 through 1991, I have done a calculation of the time and because the defendant did significant amount of jail time on some of those convictions in, of the time is tolled so all the convictions fall within the ten years, which is general use to calculate the predicate status.

THE COURT: How many felony convictions does he have?

MS. GOLOWA: I believe it's three, Your Honor. Three felony convictions.

THE COURT: I'll hear you, Mr. Fink.

MR. FINK: Your Honor, the main thrust of my argument would be that encountering prosecutor's last point regarding the remoteness of these convictions, while it may be true that he's a predicate based upon tolling of time, it would appear from the record that she has made and from my client's rap sheet, in fact, his last conviction which was criminal possession of a controlled substance in the fourth degree -- well, actually his last conviction was robbery in the first degree that would still be August 6th of 1991, which is a significant time ago.

Judge, my understanding is that my client has been out of the criminal justice system in terms of incarceration since 1999, which is approximately -- I'm not sure the month he was released, approximately five years ago because these crimes are so remote, I would ask Your Honor if, in fact, my client should testify that pursuant to People V Sandoval, he not be asked about any of these convictions. My position is that if, in fact, the prosecutor is allowed to question him with regard to any aspect of his criminal history that the prejudicial will outweigh the probative value.

The jury has that they had prior contact with the criminal system, they would use that in a propensity like fashion rather than specifically holding it against him just in terms of his credibility so that's the record.

THE COURT: The Court makes the following ruling in the form of a Sandoval compromise, which is the previous, the first ruling I made in the first trial. If the defendant choses to testify in his own behalf, he would have to admit truthfully that he has three prior felony convictions. If he does that, I will not allow the People to go into any of the underlying circumstances of those convictions or any of the other prior convictions that the defendant has.

Exception for the Defense.

Jurors are on their way up.

I understand that we'll not be working tomorrow. I will tell this jury that this trial will likely to end, I would tell the prospective jurors that the Court has other business to conduct tomorrow and that jury selection, if it's not completed today, which I don't expect it will be, will be completed on Monday and we hope to finish this trial by Thursday or Friday of next week.

MS. GOLOWA: Judge, although I would also hope

to finish the trial by Thursday or Friday, I'm just concerned that especially given the amount of time things were taken the last time that, you know, and other issues in this case that it's possible that the testimony might take a little longer.

THE COURT: Then I'll repeat that.

MS. GOLOWA: I'll make every attempt to finish earlier.

THE COURT: I'll tell them at the outset that it would be the Monday following, which is, I believe, the 10th. I will make sure I screen for jurors that will be available through a week from Monday.

MS. GOLOWA: One other issue if I can approach the Defense.

THE COURT: Go ahead, approach with the defendant.

(Whereupon a bench conference was held off the record.)

MR. FINK: Your Honor, just for the record, Eboni, E-B-O-N-I last name J-A-M-E-S-O-N.

And S-H-A-W-N.

THE COURT: Last name Dinkins.

MR. FINK: With regard to Miss Jameson's birthday January 1st, 1986.

Your Honor, one thing I forgot to mention in

going through the file provided by Mr. Dorfman, and realize there was a lot of discovery in this case, I came across the name of the individual who I believe might have been the witness on the subway. I think his name was provided but everything with regard to him was redacted. I would just ask that I be given all the information with regard to that witness so I can have a chance to possibly try to locate him and speak to him.

MS. GOLOWA: Could you specify?

MR. FINK: We can deal with it later.

COURT OFFICER: Ready for the panel.

THE COURT: Please bring them in.

(Whereupon the panel of prospective jurors enter the courtroom.)

THE COURT: Good morning, ladies and gentlemen. Mr. Sweeney, will you please swear in the prospective jurors.

THE CLERK: Ladies and gentlemen, please rise.

(Whereupon the panel of prospective jurors was administered an oath by the Clerk of the Court and answered in the affirmative.)

THE COURT: Good morning, again and welcome to Part 23 of the Kings County Supreme Court. My name is Justice Michael Brennan and I'm a Judge of the Supreme Court and we're about to commence jury

selection in a criminal trial.

Now, I'm going to give you an idea what this case is about, how long it's going to last, how many witnesses will testify and then we will determine which of you will actually sit as jurors in this case.

Let me say this up front, I recognize that jury service can be inconvenient, even judges get called for jury duty; however I regret the inconvenience but next to service in the military in time of war, the highest duty a citizen can perform is to sit in judgment of their fellow citizens even more important than voting.

Please don't ask to be excused from this case because it is inconvenient. The case is a criminal cases. As I indicated, it involves charges of robbery and various robbery related criminal offenses.

I have had a discussion with the attorneys concerning the number of witnesses, my scheduling and it has been determined that this case will likely last either to the end of next week or the following Monday at the latest, which is Monday, May 10th. That's how long it's going to last. We work from about 9:30 to one. Take our luncheon recess from one to two and generally do not work past five p.m..

If you are a selected as a juror and the jury has to deliberate overnight, you would not be sent to a

hotel or motel. You would be able to return to your own homes. Sequestration, meaning sending a deliberating jury to a hotel or motel is not an issue in this case.

Having said all of that, now, I would indicate we're going to begin jury selection today and take the rest of the day in the process of jury selection.

The Court has other scheduled matters for tomorrow, so the trial is not on. All of you are now potential jurors in this trial, you are not excused or selected on a jury. Even if you are selected on the jury, you will be excused until Monday of next week. We will finish the jury selection and attempt to complete the trial by the end of next week. I always give an extra day just in case of some scheduling problems. I told you about the duration of the case a little bit about what it's about. I recognize there may be a few of you that have personal, family, medical or other problems that would not enable you to sit for even the duration of this trial.

Again, I ask you not to be excused because it's inconvenient, and I also tell you if you get excused from this case, it doesn't mean you get to go home. It means you get to go back to the central jury room and perhaps end up as a juror on a trial that's going to last a lot longer than this one.

Having said all of that, is there anyone among you feels or has problems speaking or understanding speaking the English language? Feels they couldn't sit as a juror in this case? Please indicate by raising your hands. Please step to the front and I'll have the lawyers come up to the bar with the lawyers.

If you raised your hands, you are to get on the line. Now, when you approach, I'll ask you to give your name. Have your jury card out. I'll ask you to give the name to the court reporter and then to the Court Clerk and we will listen to you.

(Whereupon the following side-bar discussion took place at the bench between the counsel, the Court and a prospective juror.)

THE COURT: Give your name to the court reporter.

PROSPECTIVE JUROR: Janine German.

THE COURT: What is your situation, ma'am?

PROSPECTIVE JUROR: I was actually robbed in my apartment.

THE COURT: You don't feel you can be fair? Any problems with excusing her?

MR. FINK: No, no.

THE COURT: You're excused.

(Prospective juror excused.)

THE COURT: Give the name to the court reporter.

PROSPECTIVE JUROR: Deborah McDermott.

THE COURT: What's your situation?

PROSPECTIVE JUROR: My husband has MS.

THE COURT: Any objection?

MS. GOLOWA: No objection.

MR. FINK: No objection.

THE COURT: Excused.

(Prospective juror excused.)

THE COURT: Give your name to the court reporter.

PROSPECTIVE JUROR: Carletta Washington.

THE COURT: What's your situation, ma'am?

PROSPECTIVE JUROR: I have a son that has a case right down in Supreme Court.

THE COURT: You don't feel you can be fair?

PROSPECTIVE JUROR: No.

MR. FINK: No objection.

THE COURT: You're excused from this case.

(Prospective juror excused.)

THE COURT: Step up, sir.

PROSPECTIVE JUROR: Anwar Sarkar.

THE COURT: What's your situation?

PROSPECTIVE JUROR: Criminal case, I don't know

anything.

THE COURT: Neither do I. I don't know anything about this case either.

You have problems understanding English?

PROSPECTIVE JUROR: I can speak.

THE COURT: Why don't you take a seat, and if that's the only problem, it's a criminal case I'll tell you all the law that's involved here. If you get picked if you still think you have a problem, raise your hand. Have a seat.

Step up, ma'am. Give the reporter your name. You people have a long time to think about it.

PROSPECTIVE JUROR: Juan W. Tam.

THE COURT: What's your situation?

PROSPECTIVE JUROR:

THE COURT: You have problems speaking English?

PROSPECTIVE JUROR: A little.

THE COURT: Any problems?

MR. FINK: No.

MS. GOLOWA: No.

THE COURT: You're excused, ma'am.

(Prospective juror excused).

THE COURT: Step up, sir. Give your name to the court reporter.

PROSPECTIVE JUROR: Timothy Hill.

THE COURT: What's your situation?

PROSPECTIVE JUROR: My situation is that I have a situation with, an issue I have to resolve something, I have to resolve about May 14th.

THE COURT: You want to get out of jury duty. Go back down to the central jury room.

PROSPECTIVE JUROR: It might be a hardship.

THE COURT: You can't serve on any case. You're excused from this case.

(Prospective juror excused.)

THE COURT: Step up, ma'am.

PROSPECTIVE JUROR: Mary V. Taylor.

THE COURT: What's your situation, ma'am?

PROSPECTIVE JUROR: I understand you say the case might go over to next week. I have a ticket for May 7th to travel.

THE COURT: You won't be able to serve on any trial. You're excused from this case.

(Prospective juror excused).

(Whereupon the following took place in open court.)

THE COURT: I want to thank the rest of you in advance for your willingness to serve in this case. Now, some of you are about to be selected as jurors. I will explain what this trial involves and what role the Judge

and the jury play in it.

We will also determine which of you will actually sit as jurors in this case. Now, the trial which is about to be commenced, is a criminal action entitled the People of the State of New York against Mr. Keith Davis, who is called the defendant. And again it involves charges of robbery and various other related crimes.

The incident is alleged to have taken place on November 29th of the year 2001 at about 4:05 p.m. on the A train at or about the Hoyt Schermerhorn station in Brooklyn.

Now, this trial is the process by which we will determine if any of the charges against Mr. Davis are proved by sufficient evidence. In that process, those of you who are selected as jurors, and I as the Judge will perform separate functions. You as jurors are going to be called upon to determine whether or not the evidence which you will hear and see in this case establishes Mr. Davis' guilt of any of these charges.

In order to do this, you will have to evaluate all of the evidence at the end of the trial to determine whether what you have heard from the witnesses and see as exhibits is true and what it all means. This is called the finding of facts. That will be your function alone.

I, as Judge, will find no facts in this trial. Your ultimate decision is called a verdict as to the charges submitted for your consideration and your verdict will either be guilty or not guilty as to the charges submitted to you.

Now, the attorneys will present the evidence usually by the calling of witnesses and may suggest that you draw certain conclusions or inferences from the evidence. But only you can decide what really happened and your verdict as to each of the counts submitted to you will remain your decision alone.

I, as Judge, will make no determination of guilt or lack of guilt in this case. My role at trial is to ensure that you reach your verdict in accordance with the law, and I will explain to you what the law is as to all of the issues that arise during this trial.

Now, in order that the People and the defendant receive a fair trial, I may have to rule on questions concerning the conduct of this trial. Those rulings have nothing to do with whether the defendant is guilty or not guilty.

I may also rule on questions concerning what evidence you may consider and for what purpose. When I make a ruling concerning whether you may hear some testimony or see some exhibits, which is offered as

evidence, I will be ruling on whether or not you're permitted to hear it or see it as a matter of law.

Likewise, if I instruct you to disregard something that you might have heard, I will be doing so because that is the law. However, none of my rulings should be taken by you as any indication of whether you should believe all or part of what is offered as evidence or that the defendant is guilty or not. That is solely your job as jurors to determine, but you must accept the law as I give it to you if the defendant and the People are to receive a fair trial to which they both are entitled.

Now, the People of Kings County are represented by the elected District Attorney Mr. Charles J. Hynes. Mr. Hynes is represented in this courtroom by an Assistant District Attorney Miss Dvora Golowa, who I will ask to present herself to you.

MS. GOLOWA: Good morning, everybody.

THE JURY: Good morning.

THE COURT: I'm introducing the parties to you to see if any of you recognize them by name or sight. I've already mentioned the defendant's name, Mr. Keith Davis. I'll ask Mr. Davis to stand and face the potential jurors.

PROSPECTIVE JUROR: Good morning.

THE JURY: Good morning.

THE COURT: Thank you, Mr. Davis. Mr. Davis is represented by his lawyer who is called a Defense attorney. In this case it's Mr. Jonathan Fink. Mr. Fink.

MR. FINK: Good morning, everyone.

THE JURY: Good morning.

THE COURT: Now, the fact that this case, this action is brought in the name of the People or that the evidence is presented by a public official, does not in any way indicate that the public wants a specific verdict in this case. The People of this state are served by whatever verdict is justified by the evidence.

Ladies and gentlemen, serving on a jury is a vital function for citizens under our system of law. It is also a great, very great responsibility which is to accord the defendant and the People a fair trial.

In order to do so, you must be free from any preconceived notions or any sympathy or prejudices that might prevent you from returning a fair and just verdict based solely on the evidence or lack of evidence in this case. To help ensure this, our first order of business is to conduct an examination of you, the potential jurors. I will ask some questions of you and after I am finished, the attorneys for both parties will ask you

some questions.

The purpose of these questions is simply to determine whether or not you're qualified to sit as jurors in this particular case. A number of you will not be selected. Some of you will be excused because you're not qualified to sit, as a matter of law. They will be excused for cause. Others may be excused peremptorily, which means by one of the attorneys without any cause being given.

Please remember that being excused is not a reflection on you either as a citizen or as a person. It is simply a determination under the rules by one or more of the parties or by me that you're not to sit in this particular case.

At this point, the law requires that the names of 14 of you be drawn and that those persons take seats in the jury box and answer truthfully all the questions put to you regarding your qualifications to sit as jurors in this case.

Now, those of you who are not selected among the 14 now should also listen carefully to the questions that are posed and formulate your own answer to these questions because it is very likely in a little while some of, some of you will be sitting in the same seat and be called upon to answer the very same questions. It

will save time for all of us if you pay attention now. As the names are called out, please follow the direction of the Court clerk and the Court Officers.

THE CLERK: Ladies and gentlemen, please listen for your name. When I call your name, I will first pronounce it and spell it for the benefit of the court reporter. When you hear your name, please step up with your belongings and take the seat as indicated at the direction of the Court Officer, and then behind the jury box.

Othneil, O-T-H-N-E-I-L, P. Walcott, W-A-L-C-O-T-T, seat one.

Tracy, T-R-A-C-Y, Townsend, T-O-W-N-S-E-N-D, seat two.

Arnold, A-R-N-O-L-D, Alexander, A-L-E-X-A-N-D-E-R, seat three.

Keitha, K-E-I-T-H-A. M. Jervis, J-E-R-V-I-S, seat four.

Claudette, C-L-A-U-D-E-T-T-E. Sebro, S-E-B-R-O, seat five.

Valerie, V-A-L-E-R-I-E. Young, Y-O-U-N-G, seat six.

Regina, R-E-G-I-N-A, D. Kiarney, K-I-A-R-N-E-Y, seat seven.

Veronica, V-E-R-O-N-I-C-A, E. Watson,

W-A-T-S-O-N, seat eight.

Ruth, R-U-T-H. Sparks, S-P-A-R-K-S, seat nine.

Eleanor, E-L-E-A-N-O-R, A. Chapman, C-H-A-P-M-A-N, seat 10.

Barbara, B-A-R-B-A-R-A. Rotolo, R-O-T-O-L-O, seat 11.

Peter, P-E-T-E-R, Lam, seat 12.

Samuel, S-A-M-U-E-L, A. Richardson R-I-C-H-A-R-D-S-O-N, seat 13.

Felix, F-E-L-I-X, Torres, T-O-R-R-E-S, Junior, seat 14.

THE COURT: Good morning, again to all of you now seated in the jury box. The defendant, Mr. Davis, his, attorney, Mr. Fink and the Assistant District Attorney, Miss Golowa have been introduced to you. If you want to answer any of my questions in the affirmative, just raise your hands. Do any of you recognize any of the parties?

THE JURY: No.

THE COURT: By sight or by name. We have a negative response from all the prospective jurors.

Again, the incident which is allegations of robbery and other charges is alleged to have taken place on the A train at about Hoyt and Schermerhorn station in Brooklyn, November 29, 2001. Do any of you know anything

at all about this incident either having heard about it or read about it any way, shape or form?

Again I have a collective negative response from all of the potential jurors.

Now, I'm going to read a list of potential witnesses in this case. There is no obligation on the part of either side to call these witnesses, but they're potential witnesses. I read out the names to see if any of you know them.

I will tell you, as you will soon hear, the Defense doesn't have to prove anything in this case.

They don't have to present any witnesses at all and if the defendant and his attorney determine that the defendant will not testify, the fact that he does not testify cannot be held against him. That is our law.

Let me read you the list of potential witnesses. A Detective Edward Delahunt. A Police Officer Allen Schule, S-C-H-U-L-E. Police Officer Wilberto Rodriguez. And a Detective Joseph Treesi, T-R-E-E-S-I.

Police Officer Kenneth Wengert. Police officer Brian Rutherford. Joseph Davis. Gregory Norwood Thomas. Dennis Fitzgerald.

Eboni Jameson and Shawn Dinkins.

Do any of you recognize any of those names?

Again I have a collective negative response from the potential jurors.

Now, my next series of questions concern your willingness to follow my instructions on the law. In order to be jurors in this case, you do not have to know anything about the law. It is my function to explain the law to you and it will be your function to determine the facts and to apply the law to them by rendering a fair and just verdict. If you are selected as jurors in this case, I will explain the law in detail to you at the end of the trial, but it is very important to know at this stage that you will follow the law as I will give it to you.

I will therefore describe a few basic principles to make sure you can follow them. Now, it is our law that your final verdict or verdicts must be unanimous. That means you all must agree. Twelve jurors seldom agree immediately, and you will therefore be called upon at the end of the trial to deliberate together.

Will all of you promise me, the defendant and the People that if you're selected, you will participate in these deliberations, that you will express your views based on all of the evidence in the case. That you will keep an open mind until you hear all of the evidence,

that you will listen to the views of your fellow jurors and reason together until you arrive at your final unanimous verdict or verdicts?

Is there anyone among you who cannot or will not participate in that process of deliberation?

Again I have a collective negative response. There is a presumption of innocence of the defendant in all criminal cases under our law. Under our law, every person accused of a crime and brought to trial is presumed to be innocent unless or until proved guilty beyond a reasonable doubt.

The defendant here, Mr. Davis, is presumed to be innocent. The burden of proof is entirely on the People and remains with the People throughout this trial. Mr. Davis is not required to prove anything nor is he required to disprove anything.

Furthermore, this burden never shifts. It remains with the People and this presumption of innocence remains with the defendant throughout the trial.

Is there anyone among you who cannot now in his or her own mind grant to Mr. Davis this presumption of innocence?

Again all of the prospective juror have answered in the negative. Will you promise me this presumption of innocence will continue throughout the

trial and you will wait until you hear all the evidence in the case and retire to your final deliberations before you decide upon a final verdict or verdicts?

Is there anyone among you that cannot or will not do that?

Again there is a collective negative response from the potential jurors.

Now, you've heard me use the term, just use the term reasonable doubt. The standard of proof required by our law for convictions in every criminal case is proof beyond a reasonable doubt. That standard, however, does not require the People to prove the defendant guilty beyond all possibility of a doubt or beyond a shadow of a doubt. It requires the People to establish the defendant's guilt of a charged crime beyond a reasonable doubt.

Our law, therefore, requires before this jury may convict this defendant, each of you must be satisfied that the credible evidence is sufficient to convince you, beyond a reasonable doubt, that the defendant is, in fact, guilty of a charged crime.

The evidence must satisfy you beyond a reasonable doubt that the defendant is, in fact, the person who committed the charged crime. The evidence must also establish beyond a reasonable doubt each and

every essential element of a charged crime, as I will define those elements for you at the end of the trial.

Now, what does our law mean when it requires proof beyond a reasonable doubt and when is a doubt of guilt a reasonable doubt under our law?

A doubt of the defendant's guilt to be a reasonable doubt must be a doubt for which some reason can be given. The doubt to be reasonable must therefore arise because of the nature and quality of the evidence in the case or from the lack of or insufficiency of the evidence in the case. The doubt to be a reasonable doubt should be one which a reasonable person acting in a matter of this importance would be likely to entertain because of the evidence or because of the lack of or insufficiency of the evidence in the case.

A doubt of guilt is not a reasonable doubt if instead of being based on the nature and quality of the evidence or the insufficiency of the evidence it is based upon some guess, or whim or speculation unrelated to the evidence in this case.

Also a doubt of guilt is not a reasonable doubt if it is based merely on sympathy for the defendant or from a mere desire by a juror to avoid a disagreeable duty.

I, therefore, repeat, a doubt of the

defendant's guilt to be a reasonable doubt must arise either from the nature and quality of the evidence in the case or from the lack of or insufficiency of the evidence in the case.

Therefore, the first duty of each juror is to consider and weigh all of the evidence in the case and to decide what evidence you believe is credible and worthy of your consideration.

The next duty of each juror is to determine whether or not that juror has, in fact, a reasonable doubt of the defendant's guilt, as I have just defined that term for you and later fully define it for you at the end of the trial.

A reasonable doubt, the law states, is an actual doubt, one which your conscious of having in your mind after you have considered all of the evidence in the case.

If after doing so, you then feel uncertain and not fully convinced of the defendant's guilt and you're also satisfied that in entertaining such doubt, you're acting as a reasonable person should act in a matter of this importance, then that is a reasonable doubt of which the defendant is entitled to the benefit.

I repeat, it is the duty of each juror carefully to review, weigh and consider all of the

evidence in the case. If after doing so you find that the people have not proved the defendant's guilt beyond a reasonable doubt of a charged crime, as I have just defined, and will later fully define that term for you at the end of the trial, then you must find the defendant not guilty.

On the other hand, if you are satisfied that the People have proved the defendant's guilt beyond a reasonable doubt, then you must find the defendant guilty of a charged crime.

Will all of you now promise me that in your final deliberations, you will follow and apply this standard of proof that is, beyond a reasonable doubt exactly as I shall later fully explain and define that term for you.

Is there anyone among you who cannot or will not do that?

Again I have a negative response from all of the potential jurors.

Our laws requires that I advise you, members of the jury panel, that you are not, I repeat not, during the course of your deliberations to consider the subject of punishment. Sentencing, if it does become an issue lies solely within the exclusive province of the Court and the jury has no role to play in it.

You are not to consider the possibility of punishment or penalty in your deliberations and may not include any recommendations of sentence in your final verdict or verdicts.

Thus, you will see as trial jurors you are the sole and exclusive judges of the facts and the facts alone. And the Court is the sole and exclusive judge of the law and of any sentence, punishment or penalty to be imposed, if there is a verdict of guilty.

Will all of you promise that you will render your verdict free from fear, favor or sympathy and without considering the possibility of sentence or punishment?

Anyone among you who cannot?

Again I have a collective negative response. You just heard a list of potential witnesses and you can see from the list of potential witnesses there are quite a few police officers or people related to the New York City Police Department that will testify during this trial.

I tell you it is our law, you must judge each witness as an individual and determine whether and to what extent you believe his or her testimony. A number of witnesses in this case will be police officers or those affiliated with the Police Department. They will

take the same oath as any other witness. The fact that a witness is a police officer does not make that witness any more or any less credible than any other witness.

Now, is there any of you who has feelings either positive or negative about the police or has had experiences again, either positive or negative with the police that would cause you to give any greater or any lesser weight automatically to that witness' testimony. Any of you feel that way?

I'll ask you to come up one at a time with the attorneys and you can give me your answers at the bench.

(Whereupon the following side-bar discussion took place between counsel, the Court and a prospective juror.)

THE COURT: First one up is, Miss Young.

PROSPECTIVE JUROR: I work for the Police Department.

THE COURT: Doesn't disqualify you. There are over 30,000 police officer as you probably know, good ones and bad ones. Can you judge their testimony fairly?

PROSPECTIVE JUROR: Yeah, that's not the problem.

THE COURT: I want to make sure you were aware of the fact.

PROSPECTIVE JUROR: Thanks.

Coming up is Miss Rotolo.

PROSPECTIVE JUROR: Yes, ma'am.

My son-in-law is a lieutenant.

THE COURT: Does that mean police officers tell the truth?

PROSPECTIVE JUROR: No, I just wanted --

THE COURT: That was going to one of my general questions?

PROSPECTIVE JUROR: I just wanted to tell you.

THE COURT: Some people feel all cops are liars and all tell the truth?

PROSPECTIVE JUROR: No, I don't believe that.

THE COURT: When we ask you about being related to a police officer, you can tell everybody.

(Whereupon the following took place in open court.)

THE COURT: You're now going to be asked some general questions first by me and some specific questions by me, and you'll be also asked questions by the attorneys.

Now, if at any time by the questions by me or the attorneys you feel that you the information that you want to reveal is personal or even embarrassing, you can raise your hands and as you just saw, we can have you answer the questions in private, for the benefit of the

attorneys or myself, all you have to do is raise your hands.

Now, please remember that their questions like mine are just designed to determine whether you will be fair and impartial jurors in this case. You're sworn to tell the truth and you must answer each question truthfully unless I rule that you don't have to answer the question.

Firstly, have any of you had prior jury service either in a criminal case, a civil case or as a member of a grand jury? Anyone with prior jury experience, please raise your hands. I'll start with the first row.

Miss Jervis, the type of case.

PROSPECTIVE JUROR: It was an accident case.

THE COURT: I'm sorry.

PROSPECTIVE JUROR: Accident case.

THE COURT: It was a civil case?

PROSPECTIVE JUROR: Yes.

THE COURT: About how long ago was your jurors service in that case?

PROSPECTIVE JUROR: `96.

THE COURT: And without telling us what the outcome might have been, was the case settled or did the jury deliberate and reach a verdict?

PROSPECTIVE JUROR: The jury deliberated.

THE COURT: Now, this is criminal, I'll tell you it's a lot different than civil. Can you set aside whatever law you heard in that case and take the law as I give it to you in this matter?

PROSPECTIVE JUROR: Yes.

THE COURT: Thank you, ma'am. Anyone else in the first row with jury experience?

Second row, any jury experience. Miss Watson, a criminal or criminal case?

PROSPECTIVE JUROR: Civil.

THE COURT: How long ago?

PROSPECTIVE JUROR: 1998.

THE COURT: Did the jury deliberate or was the case settled?

PROSPECTIVE JUROR: It was settled.

THE COURT: Can you follow the law the way I give it to you here in the criminal matter if you're selected?

PROSPECTIVE JUROR: Yes.

THE COURT: Anything about that experience that would not enable you to be a fair juror here?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, ma'am.

Continuing along in the second row, prior jury experience. Miss Chapman, criminal or civil?

PROSPECTIVE JUROR: Civil.

THE COURT: How long ago?

PROSPECTIVE JUROR: 1996.

THE COURT: I'll ask all of you here to notice how loudly I speak. My wife thinks I'm yelling at her that's because I work here all day. This room is like a cave. You can see how I talk to make sure everybody hears me. The attorneys and the defendant have to hear your answers.

Was that case settled or did you deliberate?

PROSPECTIVE JUROR: We deliberated.

THE COURT: And can you set aside whatever civil law you might have heard and take the criminal law as I give it to you, if you're selected here?

PROSPECTIVE JUROR: Yes.

THE COURT: Anything about that experience that would not enable you to be a fair and impartial juror here?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, ma'am.

Mr. Lam, I believe you indicated you had prior jury experience?

PROSPECTIVE JUROR: Yes.

THE COURT: Criminal or civil?

PROSPECTIVE JUROR: Civil case.

THE COURT: How long ago?

PROSPECTIVE JUROR: About five years ago, `99.

THE COURT: Did the jury deliberate; was the case settled?

PROSPECTIVE JUROR: Settled.

THE COURT: Can you set aside whatever civil law you might have heard and accept the law as I give it to you here?

PROSPECTIVE JUROR: Yes.

THE COURT: Anything about that experience that would cause you not to be a fair juror here?

PROSPECTIVE JUROR: No.

THE COURT: Thank you all on that question.

Any of you or a close friend or relative been the victim of a crime? That includes burglary, robbery, having a car broken into, your pocketbook snatched, yourself or a close friend or relative been the victim of a crime? Indicate by raising your hands.

Mr. Alexander, yourself or somebody close to you?

PROSPECTIVE JUROR: Myself.

THE COURT: What was the crime, sir?

PROSPECTIVE JUROR: Robbery.

THE COURT: This is a robbery case. Was your case reported to the police?

PROSPECTIVE JUROR: Yes.

THE COURT: Anyone arrested?

PROSPECTIVE JUROR: No.

THE COURT: You said that the police did what they could do?

PROSPECTIVE JUROR: No.

THE COURT: Will you hold it against the district attorney in this case that the police didn't to the right thing in your case?

PROSPECTIVE JUROR: No.

THE COURT: And the defendant here is charged with robbery. What I'm suggesting is based on -- was there a weapon used?

PROSPECTIVE JUROR: Yes.

THE COURT: Was it a gun?

PROSPECTIVE JUROR: Yes.

THE COURT: Thi is close to the fact of this case, so what I am going to ask you and the attorneys would naturally want to know, I can't ask you to forget the emotion of the situation. What I can ask you to do is judge this case on its own merits.

In other words, don't hold it against the District Attorney that the police didn't catch anybody in this case and don't hold it against the defendant just because he's charged with robbery. Can you do that?

PROSPECTIVE JUROR: I don't know if I could be fair.

THE COURT: I appreciate your candor. Anyone else going along the front row, yourself or someone close to you been the victim of a crime? The second row?

Again, if you care to answer in private, you may indicate so and then you can approach.

Miss Sparks, yourself or someone close to you?

PROSPECTIVE JUROR: Myself.

THE COURT: What was the crime, ma'am?

PROSPECTIVE JUROR: My car was robbed.

THE COURT: Did somebody steal the car or break into it?

PROSPECTIVE JUROR: Yes.

THE COURT: Was it recovered?

PROSPECTIVE JUROR: Yes.

THE COURT: Was it in the same condition as it was when it was taken?

PROSPECTIVE JUROR: No.

THE COURT: I didn't think so. Reported to the police?

PROSPECTIVE JUROR: Yes.

THE COURT: Anyone arrested?

PROSPECTIVE JUROR: No.

THE COURT: You satisfied that the police did

what they could do in that case?

PROSPECTIVE JUROR: No.

THE COURT: Anything about that experience that would not enable you to give both sides a fair trial here?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, ma'am.

Mr. Lam, yourself or somebody close to you?

PROSPECTIVE JUROR: Myself.

THE COURT: What was the crime?

PROSPECTIVE JUROR: My car was stolen and I also got robbed.

Two different incidents.

THE COURT: Let me deal with the robbery first. The property was taken from you?

PROSPECTIVE JUROR: Yes.

THE COURT: Was a weapon used?

PROSPECTIVE JUROR: No.

THE COURT: Was it reported to the police?

PROSPECTIVE JUROR: No, I did not.

THE COURT: And the other incident was, involved an auto?

PROSPECTIVE JUROR: Yes.

THE COURT: The car was taken or broken into?

PROSPECTIVE JUROR: Taken.

THE COURT: It was recovered?

PROSPECTIVE JUROR: Yes.

THE COURT: Reported to the police?

PROSPECTIVE JUROR: Yes.

THE COURT: Anyone arrested?

PROSPECTIVE JUROR: No.

THE COURT: You satisfied the police did what they could do?

PROSPECTIVE JUROR: Yes.

THE COURT: Anything about either experience, particularly the robbery that would not enable you to be fair to both sides here?

PROSPECTIVE JUROR: I don't believe so.

THE COURT: If I were a pilot of an airplane and I told you I believe I can fly this plane, would you feel very comfortable?

PROSPECTIVE JUROR: No.

THE COURT: What I need is, I can't ask you to forget about it, can't forget it. What I can ask you to do is separate out the emotion of having been robbed and having been violated by having your property stolen and give both sides a fair trial here. Can you promise me to do that?

PROSPECTIVE JUROR: Yes.

THE COURT: Thank you.

Anyone else? Yes, sir. I'm sorry, Mr. Richardson, yourself or someone close to you?

PROSPECTIVE JUROR: Very close.

THE COURT: Okay. You care to tell us who it was?

PROSPECTIVE JUROR: It was my mother.

THE COURT: And what was the crime, sir?

PROSPECTIVE JUROR: They said that she threw lye on police officers.

THE COURT: I'm sorry?

PROSPECTIVE JUROR: She threw lye on police officer, a dangerous weapon.

THE COURT: She was charged with the crime herself?

PROSPECTIVE JUROR: I was also a part of it.

THE COURT: The obvious question is, do you think she and you were treated fairly?

PROSPECTIVE JUROR: No, I don't think so.

THE COURT: You think because of that, you think you could be a fair and impartial juror in this case?

PROSPECTIVE JUROR: Yeah, I think I can be fair.

THE COURT: Okay. Was it -- did it happen in Kings County?

PROSPECTIVE JUROR: Yes, Golden was the Assistant District Attorney at that time.

THE COURT: This was -- it was a long time ago.

Even though you don't think you were treated fairly, you think you can judge this case on its own merit?

PROSPECTIVE JUROR: I believe so.

THE COURT: Anyone among you or a close friend or relative been arrested or convicted of a crime or have a matter pending in a jurisdiction, in any geographic jurisdiction other than what's already been mentioned? I have a collective negative --

You want to come up?

PROSPECTIVE JUROR: Yes.

(Whereupon the following side-bar discussion took place between counsel the Court, and a prospective juror.)

THE COURT: This is Miss Watson.

Yes.

PROSPECTIVE JUROR: One of my sons was arrested for sexual assault.

THE COURT: You think he was treated fair?

PROSPECTIVE JUROR: Yes, I think so.

THE COURT: Is there anything about that that would enable you to not be fair?

PROSPECTIVE JUROR: I'm not sure.

THE COURT: You feel that you would be sympathetic toward the defendant because of your son?

PROSPECTIVE JUROR: Possibly.

THE COURT: What we need is your assurance that you will set emotional aspects aside and judge the case on the facts that are supplied in this courtroom. Do you think you can do that?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: Are you sure? You're not sure. I'll leave it at that. Thank you for your candor.

(Whereupon the following took place in open court.)

THE COURT: Anyone among you or, I'm sorry, I'll wait for you to get back in your seat. Anyone among you or a close friend or relative employed by the police or any law enforcement agency or any organization connected with the criminal justice system including the Legal Aid Society, New York City Police Department, Department of Correctional Services, the FBI, CIA, or lawyers that do criminal work.

Any of you have friends or relatives in that situation. I'll start with the first row Mr. Townsend, who do you know?

PROSPECTIVE JUROR: Fiance.

THE COURT: What is she?

PROSPECTIVE JUROR: Police Officer PSA 3.

THE COURT: You discuss her work with her?

PROSPECTIVE JUROR: Does she discuss her work with me?

THE COURT: Yes.

PROSPECTIVE JUROR: Occasionally.

THE COURT: I listed a whole group of police officers that will testify in this case. There are over 30,000 police officers in New York City. Good ones and bad ones, just like every other walk of life including judges, by the way, good ones and bad ones. The obvious question to you is are you going to automatically accept as the truth police testimony or will you weigh and evaluate like you would any other witness?

PROSPECTIVE JUROR: Weigh and evaluate.

THE COURT: Thank you, sir.

Continuing along the first row. Yes, Miss Young.

PROSPECTIVE JUROR: I work for the Police Department.

THE COURT: In what type of capacity?

PROSPECTIVE JUROR: 911 so I would be dispatching the police officer.

THE COURT: The same question. You deal with

police officers all the time. Can you weigh and evaluate police testimony like anyone else?

PROSPECTIVE JUROR: Yes.

THE COURT: Thank you.

Anyone else in the first row.

Going to the second row, Miss Kiarney, who do you know?

PROSPECTIVE JUROR: My cousin.

THE COURT: Is a what?

PROSPECTIVE JUROR: My cousin and her husband are Transit Police Officers.

THE COURT: The obvious question is are you going to automatically reject or accept police testimony or weight and evaluate it?

PROSPECTIVE JUROR: I'll weight and evaluate it.

THE COURT: Continuing along the second row. Miss Sparks?

PROSPECTIVE JUROR: Yes, my brother-in-law is a sheriff and my brother's in a correctional facility.

THE COURT: Any of these relationship not enable you to judge fairly and evaluate police testimony?

PROSPECTIVE JUROR: No.

MR. FINK: I heard brother-in-law sheriff.

THE COURT: And somebody works for the

Department of Correctional Services; who is that?

PROSPECTIVE JUROR: My brother.

THE COURT: Miss Rotolo.

PROSPECTIVE JUROR: My son-in-law is a lieutenant in the Police Department.

THE COURT: Does he work in Brooklyn?

PROSPECTIVE JUROR: Yes, he does.

THE COURT: Anything about that relationship that would not enable you to fairly judge and evaluate police testimony?

PROSPECTIVE JUROR: No.

THE COURT: Anyone else?

Mr. Lam, who do you know.

PROSPECTIVE JUROR: My brother-in-law, state officer.

THE COURT: New York State?

PROSPECTIVE JUROR: Yes.

THE COURT: Anything about that relationship that would cause you to either accept or reject p0olice testimony automatically without evaluating it?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, sir.

Anyone among you have difficulty speaking or understanding the English language?

Collective negative response.

Now, I'm going to ask you a series of personal questions, and I'll tell you what the questions are ahead of time so you can prepare your answers.

I'll ask you what section of Brooklyn you live in. If you're employed, I'll ask you what you do for a living. If there are any other adults in your household, I'll ask you what they do for a living and you've heard the type of questions we have been asking or I've been asking. I want you to search your own minds and your own conscious to see if there is any reason that I haven't touched upon that you would volunteer to us why you would not be a fair and impartial juror in this case. Okay.

Mr. Walcott, the section of Brooklyn you live in?

PROSPECTIVE JUROR: Bedford Sty.

THE COURT: And are you employed, sir?

PROSPECTIVE JUROR: I am.

THE COURT: What do you do, sir?

PROSPECTIVE JUROR: Janitor.

THE COURT: Any other adults in your household who are employed?

PROSPECTIVE JUROR: Anyone.

THE COURT: Any other adults living with you who are employed?

PROSPECTIVE JUROR: Yeah. Yes.

THE COURT: And who is that?

PROSPECTIVE JUROR: My wife.

THE COURT: What does she do, sir?

PROSPECTIVE JUROR: She does domestic work.

THE COURT: Any reason that you can think of as to why you would not be a fair juror if you were selected in this case?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, sir.

Mr. Townsend, the area of Brooklyn you reside in?

PROSPECTIVE JUROR: Bushwick.

THE COURT: And are you employed, sir?

PROSPECTIVE JUROR: Yes.

THE COURT: What do you do?

PROSPECTIVE JUROR: Truck driver.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: I live alone.

THE COURT: Any reason other than what you have already mentioned to us as to why you would not be a fair and impartial juror in this case?

PROSPECTIVE JUROR: No.

THE COURT: Mr. Alexander, the area of Brooklyn you reside in, sir?

PROSPECTIVE JUROR: East New York.

THE COURT: Are you employed?

PROSPECTIVE JUROR: Yes.

THE COURT: What type of work do you do?

PROSPECTIVE JUROR: Bus driver.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: No.

THE COURT: Any reason other than what you already stated to us why you would not be a fair and impartial juror in this case?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, sir.

Miss Jervis, the area of Brooklyn you reside in?

PROSPECTIVE JUROR: Crown Heights.

THE COURT: Are you employed outside the home?

PROSPECTIVE JUROR: Yes.

THE COURT: What do you do, ma'am?

PROSPECTIVE JUROR: Work at Kings Jewish Medical Center.

THE COURT: What type of work do you do?

PROSPECTIVE JUROR: A clerk.

THE COURT: Any other adults employed?

PROSPECTIVE JUROR: No.

THE COURT: Any reason you would not be a fair and impartial juror if you were selected here?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, ma'am.

Miss Sebro, did I pronounce your name correctly?

PROSPECTIVE JUROR: Yes.

THE COURT: Area of Brooklyn you reside in?

PROSPECTIVE JUROR: Flatbush.

THE COURT: Employed outside of the home?

PROSPECTIVE JUROR: Yes.

THE COURT: What type of work? Do you teach?

PROSPECTIVE JUROR: I'm a teacher, teach adult as well as elementary.

THE COURT: I ask it that way because all women are employed inside the home. Some of you have other jobs. Any other adults employed?

PROSPECTIVE JUROR: No.

THE COURT: Any reason you would not make a fair juror, if selected in this case?

PROSPECTIVE JUROR: No.

THE COURT: Miss Young, the area of Brooklyn you reside?

PROSPECTIVE JUROR: Carroll Gardens.

THE COURT: Are you employed outside the home.

PROSPECTIVE JUROR: Yes.

THE COURT: What do you do?

PROSPECTIVE JUROR: Police Department 911.

THE COURT: Any other adults in your household?

PROSPECTIVE JUROR: Yes, my husband.

THE COURT: What does he do?

PROSPECTIVE JUROR: Security officer.

THE COURT: Any reason you would not make a fair juror, if selected?

PROSPECTIVE JUROR: No.

THE COURT: Mr. Torres, the area of Brooklyn you reside in?

PROSPECTIVE JUROR: Canarsie.

THE COURT: Are you employed, sir?

PROSPECTIVE JUROR: Yes.

THE COURT: What do you do?

PROSPECTIVE JUROR: Parks.

THE COURT: You work for the Department of Parks?

PROSPECTIVE JUROR: Parks.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: Yes.

THE COURT: Who is that?

PROSPECTIVE JUROR: My girlfriend.

THE COURT: What does she do?
PROSPECTIVE JUROR: Case worker.
THE COURT: Any reason you would not make a fair and impartial juror if selected?
PROSPECTIVE JUROR: No.
THE COURT: Thank you, sir.
Going to the second row. Kiarney or Karney.
PROSPECTIVE JUROR: Either way.
THE COURT: The area of Brooklyn you reside in?
PROSPECTIVE JUROR: Crown Heights.
THE COURT: And are you employed outside of the home?
PROSPECTIVE JUROR: Yes.
THE COURT: What do you do?
PROSPECTIVE JUROR: Reservation.
THE COURT: Any other adults employed?
PROSPECTIVE JUROR: No.
THE COURT: Any reason you would not make a fair juror, if selected?
PROSPECTIVE JUROR: No.
THE COURT: Miss Watson, the area of Brooklyn you reside in?
PROSPECTIVE JUROR: East Flatbush.
THE COURT: Are you employed outside of the home?

PROSPECTIVE JUROR: Yes, I am.
THE COURT: What do you do, ma'am?
PROSPECTIVE JUROR: Registered nurse.
THE COURT: A little louder?
PROSPECTIVE JUROR: A nurse.
THE COURT: Where do you work?
PROSPECTIVE JUROR: Brooklyn Vital Center.
THE COURT: Any other adults in your household employed?
PROSPECTIVE JUROR: My husband retired.
THE COURT: What did he retire from?
PROSPECTIVE JUROR: Home improvement construction.
THE COURT: Any reason other than what you have already told us why you would not be a fair juror?
PROSPECTIVE JUROR: No.
THE COURT: Thank you, ma'am.
Miss Sparks, the area of Brooklyn you reside in.
PROSPECTIVE JUROR: East New York.
THE COURT: Are you employed outside of the home?
PROSPECTIVE JUROR: Yes.
THE COURT: What do you do, ma'am?
PROSPECTIVE JUROR: A security officer.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: No.

THE COURT: Any reason you would not be a fair juror, if you are selected?

PROSPECTIVE JUROR: No.

THE COURT: I thank you.

Miss Chapman, the area of Brooklyn you reside in?

PROSPECTIVE JUROR: Canarsie.

THE COURT: Any other adults -- are you employed outside of the home?

PROSPECTIVE JUROR: No, I'm not.

THE COURT: Are you retired?

PROSPECTIVE JUROR: Yes.

THE COURT: Are you enjoying it?

PROSPECTIVE JUROR: Yes.

THE COURT: Good for you. What did you retire from?

PROSPECTIVE JUROR: I was a nurse's aid.

THE COURT: Any other adults in your household?

PROSPECTIVE JUROR: My husband.

THE COURT: What did he do?

PROSPECTIVE JUROR: He was a security guard.

THE COURT: Any reason you would not be a fair

and impartial juror if you were selected?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, ma'am.

Miss Rotolo, the area of Brooklyn you reside in.

PROSPECTIVE JUROR: Bergen Beach area.

THE COURT: And are you employed outside the home?

MR. FINK: I'm sorry.

THE COURT: The area of Brooklyn?

PROSPECTIVE JUROR: Georgetown, Bergen Beach, Mill Basin area.

THE COURT: Did you ever have employment?

PROSPECTIVE JUROR: Yes.

THE COURT: What did you do?

PROSPECTIVE JUROR: Bookkeeper.

THE COURT: Any other adults in your household who are employed?

PROSPECTIVE JUROR: My husband.

THE COURT: What does he do?

PROSPECTIVE JUROR: He's in real estate.

THE COURT: Any reason that you would not be a fair and impartial juror if you were selected in this case?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, ma'am.

Mr. Lam, the area of Brooklyn you reside in.

PROSPECTIVE JUROR: Borough Park.

THE COURT: Are you employed, sir?

PROSPECTIVE JUROR: Self-employed.

THE COURT: What type of work do you do?

PROSPECTIVE JUROR: Travel agency.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: My wife, my sister and my brother-in-law.

THE COURT: What do they do?

PROSPECTIVE JUROR: Work, wife works as an accountant in my office. Sister is a pharmacist. And brother-in-law is a New York State officer.

THE COURT: Any reason you would not make a fair juror if selected in this trial?

PROSPECTIVE JUROR: No.

THE COURT: Thank you very much.

Mr. Richardson, the area of Brooklyn you reside in, sir?

PROSPECTIVE JUROR: Bedford Stuyvesant.

THE COURT: Are you employed?

PROSPECTIVE JUROR: Self-employed.

THE COURT: What type of work do you do?

PROSPECTIVE JUROR: Carpentry and refurbish antique furniture.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: My wife.

THE COURT: What does she do?

PROSPECTIVE JUROR: Housewife and foster mother.

THE COURT: Any reason you would not be a fair juror if selected in this case?

PROSPECTIVE JUROR: No.

THE COURT: Thank you all. I'm going to turn it over to the attorneys for about 15 minutes each and then we'll take a break and while the attorneys make their choice, those of you out there will get a break when we get done with the questions.

The questioning will start with Assistant District Attorney, Miss Golowa.

MS. GOLOWA: I think we're pretty much up to good afternoon at this point. Okay. As the Judge introduced me before, my name is Dvora Golowa, I'm an Assistant District Attorney here in Brooklyn. I work for Mr. Hynes, who is the elected District Attorney, and I'm going to be the prosecutor in this case. It's my job to be here in this courtroom.

I know that all of you have a lot of other things going on in your lives. Most people who live, especially in New York and I know all of you live in Brooklyn. You know, it's a big juggling act, nobody thinks it's easy for you to come here now and sit here in this jury box and to have myself, the Judge, Mr. Fink ask you questions, personal questions. It's hard and, you know, I can only apologize, but I can tell you that in order for this system to work, in order for us to get a fair jury in this case, I have to ask those questions and so I ask you to bear with me. If there is something that's private or confidential as the judge said, we can go up to the bench. And, you know, the other thing is some people are not comfortable with, I'll try to speak with all of you.

Experience shows, if I wait for someone to volunteer, we'll be here all day. So we are at sixth grade feeling of the teacher looking around and calling on the person. In this case, it's not about that. There is no right or wrong answer here. So I'm going to try to ask you to give me answers but what are your true feelings or your true positions. That's the answers that we need. We're looking for a fair jury for this particular case and doesn't reflect on anyone of you if you are not selected as a juror in this case. Some

people may not be right for this jury but right for another jury. We need a fair jury for this case.

That being said, just a couple of things that I got here. Miss Jervis, where do you live?

PROSPECTIVE JUROR: Crown Heights.

MS. GOLOWA: It's just as the Judge said, the acoustics here are very hard. Even though I'm standing here we need you to talk loud so everybody else can hear you.

And Miss Kiarney, again, the pronunciation of your name, I have one of those names. I'm sorry, but I don't think I'm going to learn all of them in the next 15 minutes. What did you say you do for a living?

PROSPECTIVE JUROR: Reservation or driver for the disabled, deaf and the blind.

MS. GOLOWA: Like the Access A Ride?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Thanks.

Now, what I'm going to do is get right to the point about, you know, what's going to be here. Now, the judge told you a little bit about this case. It's a robbery. You heard that it took place back in November of 2001, which is quite some time ago, and that it happened on a subway train.

So let me first start by asking you, and Mr.

Walcott, I'll ask you, do you think if the incident happened in 2001 that anybody would really remember what happened then?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Okay. And do you think that there are things that happen in 2001 or before that, that you don't remember?

PROSPECTIVE JUROR: No.

MS. GOLOWA: You remember purchases that happened like three, four years ago?

PROSPECTIVE JUROR: I don't remember things from three years.

MS. GOLOWA: Okay. But, you know, do you remember what you had for breakfast on November 29, 2001?

PROSPECTIVE JUROR: No.

MS. GOLOWA: But there are things that you do remember that are three years old, right?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: What is the difference between the things you do remember and the things you don't remember?

PROSPECTIVE JUROR: One of the things that I remember is things that I have in my head.

MS. GOLOWA: Okay. Would you agree with me that eating breakfast is something you do every day or pretty much every day, okay?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: It's kind of a routine thing in your mind. Maybe you don't necessarily remember, you know, what you had for breakfast in 2001, but when it comes to things that are important or significant in your life, would you agree with me that might stand out and cause you to remember it better?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Mr. Townsend, how about you, what do you think about that?

PROSPECTIVE JUROR: Only serious events. Events that have serious effects on my life I would remember.

MR. FINK: I'm sorry?

THE COURT: Louder.

PROSPECTIVE JUROR: Only serious events. Only particular events that have effects on my life I would remember.

MS. GOLOWA: So if something significant or serious, out of the ordinary happened, even though it was a number of years ago, you would remember that, right?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: And in this case the way that evidence is going to come in, the way that I'm going to prove this case beyond a reasonable doubt is that there

is going to be witnesses who are going to come and sit here in this chair. They're going to swear to tell the truth and they're going to tell you what happened.

Now, you're going to have to listen to them, evaluate their testimony, whether they be a police officer or civilian, the same way as the judge told you and decide whether you believe them and whether the case has been proven beyond a reasonable doubt.

So Mr. Townsend, you have said that you do remember certain things that are significant, okay. Do you think that if you hear testimony from witnesses about something that happened, that was significant in November of 2001 that you could accept that, you could rely on their memory, and if you believe them, you know find that the case has been proven beyond a reasonable doubt?

PROSPECTIVE JUROR: Could I believe them? It's possible.

MS. GOLOWA: Would you be comfortable relying on the witness' memory to get you, to prove beyond a reasonable doubt with regard to something significant?

PROSPECTIVE JUROR: Yes. I think I can.

MS. GOLOWA: What about Mr. Alexander?

PROSPECTIVE JUROR: Yeah.

MS. GOLOWA: Miss Jervis?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Is there anybody here that feels this happened so long ago there is no way they're ever going to be convinced beyond a reasonable doubt with regard to things that happened in 2001. I'm going to take that as a no. You have to shout a little bit.

PROSPECTIVE JUROR: I remember things of importance and things that have reflections on your life or somebody else's life.

MS. GOLOWA: Miss Jervis, let me ask you something else. Let's say that there is a car accident on the street, you know, car runs through a red light, hits another car. People are injured, somebody calls the police, ambulances start coming, and let's say that you're a witness to this car accident, right. Let's assume it's a busy street and Miss Sebro was also a witness to this car accident.

Now, police come and ask you what happened and they say to you, you know, did you see what happened and you say, he ran the red light and then we ask Miss Sebro and Miss Sebro says, I didn't see but he was speeding the light but he was speeding.

Does it make sense to you, Miss Jervis, people might see the exact same incident and have different perceptions of what happened?

PROSPECTIVE JUROR: Yes, that's true.

MS. GOLOWA: Miss Sebro, do you think that maybe there are different things that register in people's minds or stay in People's memories?

PROSPECTIVE JUROR: Yes, I think so.

MS. GOLOWA: What I'm going to ask you and I'll turn over to Miss Young is that if you have two witnesses and they come in here and they tell you what happened back in 2001 and their stories, memories of the incident don't line up exactly on every single little detail, do you feel that you couldn't believe them about all the details because there was some inconsistencies in the little details?

PROSPECTIVE JUROR: I think there would have to be inconsistencies because everybody sees things differently. If it came down, the puzzle came together, then that would be it.

MS. GOLOWA: Now, do you think that if I asked Miss Jervis, you know what color shirt was the driver wearing and she said blue, and then I asked Miss Sebro, what color shirt the driver was wearing and the clothing they both believe and Miss Sebro says Browne, two completely different answers. It couldn't have been blue or Browne, one or the other. If I say was there a car crash that day, what would your answer be? But they're different.

PROSPECTIVE JUROR: They're in agreement that the actual -- it happened. Was the only description how it happened or maybe a few details off slightly, maybe he had a Browne jacket on top of that blue shirt.

MS. GOLOWA: Or I mean I'll ask you, Mr. Torres, do you think it's possible one of them is wrong about the shirt? Does that mean they're wrong about the facts that there was a car accident?

PROSPECTIVE JUROR: No.

MS. GOLOWA: Or the fact that the driver ran the red light?

PROSPECTIVE JUROR: No.

MS. GOLOWA: So does everybody understand what I'm saying? Does everybody disagree with the fact that if, even if two people tell you what happened and they don't lineup on everything and they're inconsistencies about something, they still could be right about the other things that happened, things that were significant and important?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Everyone agree with that? Anyone that feels because one person says that it happened a little bit differently, that they will not be able to accept any of the facts that these people testified to, to get them to prove beyond a reasonable doubt? Does

anybody feel they would not be ever able to reach a verdict of guilty if, you know, if you believe the witness in this case and proved it beyond a reasonable doubt because there was some inconsistency? Nobody is asking you to make a decision here as to whether or not the defendant is guilty or not. You haven't heard from any witnesses. You can choose. It will be your choice and your decision in your deliberations and your assessment whether to believe them.

Now, I'm going to ask you about something else. In this case, you're going to hear that Mr. Davis is charged with a robbery that involved both a gun and a knife. Was not the only one that participated in this robbery.

You're going to hear that there were three individuals who were part of this robbery, and that the individuals were arrested but the trial in this courtroom is only going to be with regard to Mr. Davis. And you may not hear anything about what happened to the other two people. But you will be instructed by the Judge that you're considering the charges only against Mr. Davis.

Is there anybody here that feels that they will not be able to come to a verdict with regard to this defendant if they don't know what happened to the other defendants? Miss Kiarney?

PROSPECTIVE JUROR: No.

MS. GOLOWA: That's not a problem for you?

PROSPECTIVE JUROR: No.

MS. GOLOWA: Miss Watson?

PROSPECTIVE JUROR: Think -- think it may affect my decision because it's important to know.

THE COURT: I tell you the law is you judge the case against this defendant based on what you hear and see in this courtroom, and you're not to speculate about what happened to anybody else. Can you follow that instruction because that's what the law is?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Yes, sir, Mr. Richardson?

PROSPECTIVE JUROR: Was Mr. Davis the one that --

THE COURT: She can't answer any questions about the facts of the case. You're going to have to judge the facts of this case as you hear them, but the facts of the case are going to be used by you to determine whether Mr. Davis is guilty or not and you're not going to hear what happened eventually to the disposition of anybody else that might have been arrested in this case, and I'll tell you that it's the law, you can't speculate about what happened to the other individuals, that you are to judge the case against Mr.

Davis based on what you hear and see in this courtroom.

MS. GOLOWA: Mr. Richardson, I can't testify.

THE COURT: There was a hand up over here.

PROSPECTIVE JUROR: In a case like that, would I be hearing parts of the --

THE COURT: Counsel, you can't stand there.

PROSPECTIVE JUROR: In a case like this, would I be hearing only parts of the evidence?

THE COURT: I don't know what you're going to hear. I haven't heard it. You'll hear evidence and you'll judge whether it convinces you beyond a reasonable doubt whether Mr. Davis is guilty of any crime. That's what you're going to do and whether you feel it's only part, that's your decision to make but based on what you do hear and do see, that's what you'll make the judgment on.

You're not going to speculate about anything else that's not involved in this trial.

MS. GOLOWA: Now, as the Judge said, I can't testify or tell you anything about the specific facts. Mr. Richardson, you do bring up a very important point in this case. If there are three individuals involved that, you know, you may hear testimony about each of them doing different things, I'll tell you right now that it's quite possible that you will hear that this defendant did not

have the gun and never touched a gun in this case.

So and yet here I am, I'm going to stand before you and ask you if you are selected on the jury to find the defendant guilty of a crime involving that gun. So I need to ask you a question.

Mr. Lam, you ever seen any movies involving a bank robbery or anything like that?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: So the characters in the bank robbery usually involved the stickup guy with the gun or the note, whatever it is, right. Comes in with a gun, maybe there is somebody kind of guarding the door, locking out, whatever it is. Doesn't necessarily have a gun and you have the get away car. Somebody is out there driving, so the second they come out there zooming off right?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: So the Judge is going to instruct you on the law in this case about when people could be responsible for the actions of other people. But if you hear from the Judge that you're going to hear from the Judge that a person can be considered responsible for the actions of another person when they're all part of the same crime, okay.

THE COURT: I'll give you the details on what

criminal responsibility for the conduct of the other for conduct done by another person is at the end of the trial. Will you be able to follow that instruction?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Mr. Richardson, would you be able to follow that instruction?

PROSPECTIVE JUROR: Sure.

MS. GOLOWA: Miss Rotolo?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Miss Chapman?

PROSPECTIVE JUROR: Yes, I will.

MS. GOLOWA: Anybody here that feels they cannot follow that instruction? Okay. And I'm going to finish up. First of all, there is something else very important that may happen here and that is that you may hear from some of the civilians in this case. They're going to sit here and they're going to tell you that you may hear they have, in fact, a criminal record, that they have been convicted of crimes before. They have done things that cause them to be arrested before they were a victim in this case.

Does anybody feel if a witness gets up on the stand and testifies and tells you that I was a victim and tells you what happened about a particular incident, that you couldn't believe him because he had previously been

convicted of other crimes?

THE COURT: Let me tell you what the law is on that issue. If a witness testifies that they were previously convicted of a crime, you may use that as a factor in judging the credibility of that witness; however, you may not reject the witness' testimony out of hand, but having a prior conviction is an element that you can use in judging the credibility of a witness. That's the law on that issue.

MS. GOLOWA: Okay. And so you will have to make a decision and judge it. The question is, is anybody here that feels there may be somebody who feels this way, if they hear this person has convictions, may be a lot of convictions for crimes, that there is no way they can ever accept that testimony to get to a point of proof beyond a reasonable doubt? Anybody that feels that way. Yes, Mr. Walcott?

PROSPECTIVE JUROR: Yes. I can't listen to somebody that I'm trying to figure out in my head because me if I have a conviction, there are certain things that I can't do. For instance, that I can't be a witness. I mean I can't be a juror if I have a conviction.

MS. GOLOWA: If you have a felony conviction.

PROSPECTIVE JUROR: Right. So people come now and I have been a juror now knowing this, people ask,

going to having a conviction and I'm going to have to believe them, right.

MS. GOLOWA: Right.

PROSPECTIVE JUROR: What happens to me?

THE COURT: Do you automatically believe that somebody has a felony conviction they can't be a victim of a crime?

PROSPECTIVE JUROR: The law tells me --

THE COURT: What I'm saying to you is that the law is that you can use the fact that they have a prior conviction in judging their credibility but you can't reject their testimony merely because they have a prior conviction. Can you follow that instruction?

If you have difficulty following that instruction, let us know?

PROSPECTIVE JUROR: I would have to hear them first.

THE COURT: You have to wrap it up, Miss Golowa.

MS. GOLOWA: So is there anybody else that has the same problem Mr. Walcott has, where they feel they can't assure us, they can follow an instruction about considering the testimony of somebody with a criminal record? Mr. Townsend?

PROSPECTIVE JUROR: Their credibility is in

question but I can draw the facts at that time.

MS. GOLOWA: It's possible, hearing what they say and assisting what they say you might be able to believe what they say?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Mr. Alexander?

Miss Jervis?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Anybody that feels they absolutely cannot take testimony and evaluate it for what it's worth when somebody has a criminal record?

Anybody else that, anybody feels I should know about their ability to be a juror here or to be fair in this case?

MS. GOLOWA: Okay, thank you very much.

THE COURT: Take about 15 minutes or so.

MR. FINK: Thanks, Judge. Now it's good afternoon, everybody. Again my name is Jonathan Fink. I represent Mr. Davis and similar to what the prosecutor said to you when she started her remarks to you, I'll say the same thing. That if I ask the any questions that are embarrassing or may seem silly or seems like I'm prying you know, I apologize for that.

If you want to hold that against me, by all means, do so. Don't hold it against my client, please.

This is perhaps one of the most important parts of the trial, jury selection because this is the point in the trial where both the prosecution and the Defense have to pick 12 jurors who can be fair and impartial jurors to both sides, and if there is anything that anyone has heard at this point or has experienced in their lives, now is the time to let us know you can't be fair and impartial jurors, because there is a good chance that some of you are going to be picked to sit on the jury fairly soon.

If there is anything that anyone has experienced that makes them think they can't be fair and impartial jurors, if you need to approach the bench, if you need something about this case the fact that this is a robbery trial that makes someone or some you feel uncomfortable, please let us know.

Obviously I'm talking to the 14 people sitting in the jury box. Obviously those of you out in the audience you'll probably be sitting up here some time today or if not sooner than that.

Obviously I'm directing my questions and my discussions to all of you as well. I know Miss Sparks, you raised your hand. You want to speak to the Judge.

THE COURT: This is Miss Sparks approaching.

(Whereupon the following side-bar discussion

took place between counsel, the Court and a prospective juror.)

THE COURT: She believes she may know the defendant. I'll excuse her.

Don't mention it to any of the other jurors. Thank you.

MR. FINK: Have you discussed this with anyone?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, ma'am.

(Prospective juror excused)

(Whereupon the following took place in open court.)

THE COURT: Go ahead.

MR. FINK: Thank you, Judge. The Judge talked about a number of things in his remarks to you. Does everyone understand that my client is presumed to be innocent?

Anyone who doesn't understand that or disagrees with that?

Mr. Richardson, you understand that?

PROSPECTIVE JUROR: Yes, sir.

MR. FINK: Mr. Torres, you understand that?

PROSPECTIVE JUROR: Yes.

MR. FINK: Miss Young?

PROSPECTIVE JUROR: Yes.

MR. FINK: Does everyone understand that the burden of proof is with the prosecution? It's Mr. Townsend?

PROSPECTIVE JUROR: Yes.

MR. FINK: How are you?

PROSPECTIVE JUROR: I'm fine. I'm listening.

MR. FINK: You understand that the burden of proof is with the prosecution?

PROSPECTIVE JUROR: Right.

MR. FINK: The burden of proof in a criminal case is proof beyond a reasonable doubt?

PROSPECTIVE JUROR: Yes.

MR. FINK: Does everyone understand that. Mr. Alexander, you understand that?

PROSPECTIVE JUROR: Yes.

MR. FINK: Miss Chapman, if I say anyone's name wrong, I apologize.

Miss Walcott, do you understand that?

PROSPECTIVE JUROR: Yes.

MR. FINK: By the way, a number of people indicated they sat on civil cases, correct.

Miss Jervis, you sat on a civil case.

PROSPECTIVE JUROR: Yes.

MR. FINK: Anyone ever sat on a criminal trial before?

PROSPECTIVE JUROR: No.

MR. FINK: Do you understand I'm addressing this to people who have been part of a civil case? There is a different standard of proof in a civil case. In a civil case it's the preponderance of the evidence.

THE COURT: Don't tell them what the standard of proof is. You'll confuse them. It's a different standard, and I'll tell you what the standard is, reasonable doubt at the end of the trial.

MR. FINK: Judge, I hope I can ask this. It's a higher standard in a criminal matter. Everyone understand that that's involved in a civil case. In terms of the burden of proof and it being with the prosecution, everyone understands it stay with the prosecution the entire time. Mr. Lam, do you understand that?

PROSPECTIVE JUROR: Yes.

MR. FINK: Do you think that I have to ask or do you think I have to do anything as a Defense attorney in a criminal trial?

PROSPECTIVE JUROR: You don't have to prove it. I guess you don't have to do anything.

MR. FINK: That's true. Do you realize I could actually sit in this chair the entire time and not ask a single question of any witnesses who come in here and

testify?

PROSPECTIVE JUROR: That's correct.

MR. FINK: Mr. Richardson, you understand that?

PROSPECTIVE JUROR: Of course.

MR. FINK: You understand the burden of proof is with the prosection throughout the entire trial. Is there anyone that feels that I have to prove my client's innocence?

Yes.

MR. FINK: You think I have to prove his innocence?

PROSPECTIVE JUROR: Yes.

MR. FINK: You think I have to prove that?

PROSPECTIVE JUROR: Of course.

MR. FINK: In fact, that's not the case. I don't have an obligation to prove anything. He's presumed innocent. The only one who has to prove anything in this room is the prosecutor. She has to prove him or try to prove him guilty beyond a reasonable doubt, but I don't have an obligation to prove him innocent. Again, he's presumed innocent. How do you defend that?

PROSPECTIVE JUROR: If you don't go out and you have to be defended, whatever the prosecution says.

MR. FINK: Of course, I'm going to defend my

client.

THE COURT: If the Defense attorney and defendant just sat there for the whole trial and didn't say anything, you still have to judge the case on what you do hear. If it doesn't prove the defendant's guilt beyond a reasonable doubt, even if Mr. Fink never made an opening statement or asked a single question, you have to find the defendant not guilty if whatever you didn't hear, didn't proof beyond a reasonable doubt.

PROSPECTIVE JUROR: I see.

THE COURT: That's what we mean by the burden of proof being on the People and never shifting to the defendant.

MR. FINK: Mr. Townsend, I'll ask you this. Along with -- the Judge has indicated, suppose that Miss Golowa calls witnesses into this trial and after hearing their testimony you feel that perhaps they're mistaken about what happened back in the 2001 or they're lying about what happened in 2001, you feel that simply through her questions of this witness, if that were the case and it was time to go and deliberate, what would your verdict be?

PROSPECTIVE JUROR: It's hard to say.

THE COURT: If you have a reasonable doubt based on the evidence that is presented, there is only

one verdict you can have?

PROSPECTIVE JUROR: Yes. If you're not going to cross-examine or if you are not going to produce any kind of witnesses, then I have no choice.

MR. FINK: You have no choice?

PROSPECTIVE JUROR: But to go by what's presented by the prosecutor.

MR. FINK: And my question to you is supposed after she calls witnesses to the stand and you hear them, you don't believe them, you think it's possible she can call a witness to the stand and testifies and you can sit here as a juror and not believe that person?

PROSPECTIVE JUROR: Yes.

MR. FINK: Do you think it's possible for a witness to come into this courtroom, swear to tell the truth and not tell the truth?

PROSPECTIVE JUROR: Of course.

MR. FINK: Do you think it's possible for a witness to swear to tell the truth think they're telling the truth and be mistaken about what happened?

PROSPECTIVE JUROR: Yes.

MR. FINK: Now, suppose you get that impression without me asking a single question. You would return a verdict of not guilty, right?

PROSPECTIVE JUROR: Possible.

MR. FINK: Well, are you saying that you would feel, I would need to ask a question before you could disbelieve a witness?

PROSPECTIVE JUROR: My decision won't be based on my own, it would be with the other jurors as well.

THE COURT: But whatever it is, it's going to be based on what you do hear and do see.

Everybody likes to hear both sides of the story in a criminal trial. You don't have to hear both sides of the story; you may hear one side. Whatever you do hear, that's what you have to use to base your judgment.

MR. FINK: Miss Jervis, along the same lines, if you heard testimony in this case from witnesses, you understand what they say is evidence, correct?

PROSPECTIVE JUROR: Yes.

MR. FINK: Do you also understand that if you're picked as a juror, it's your job to evaluate that evidence?

PROSPECTIVE JUROR: Yes.

MR. FINK: You have to decide what weight to give that evidence. Now, if you don't believe what witnesses are saying, you will return a verdict of not guilty, correct?

PROSPECTIVE JUROR: If I --

THE COURT: If it creates a reasonable doubt?

PROSPECTIVE JUROR: If I'm not sure they're telling the truth?

MR. FINK: If you have a reasonable doubt, then you will return a verdict of not guilty?

PROSPECTIVE JUROR: Yes.

MR. FINK: Anyone who feels differently than Miss Young. Miss Young, do you agree with that?

PROSPECTIVE JUROR: Yes.

MR. FINK: Miss Watson, do you agree with that?

PROSPECTIVE JUROR: Yes.

MR. FINK: Miss Chapman?

PROSPECTIVE JUROR: Yes.

MR. FINK: Miss Rotolo?

PROSPECTIVE JUROR: Yes.

MR. FINK: Miss Golowa talked about, you know, she talked about a hypothetical of a car accident and perhaps one person seeing something and another person not seeing something.

Let me ask you this. Suppose that I'm walking down the street and I go up to two people and I take out a gun, according to one person.

And another person says they never saw a gun and both witnesses come into this courtroom and they testify. One says I saw Mr. Fink holding a gun in his hand. Hopefully, that would never be the case but

hypothetically speaking one person says they saw me holding a gun and another person says, yeah, I was looking at him and I never saw him holding a gun. What would you do with that kind of testimony, Mr. Townsend?

PROSPECTIVE JUROR: It's hard. You have two people, one saying yes; one saying no. It's hard.

MR. FINK: It raises, certainly it would be, you would have a difficult choice to make.

PROSPECTIVE JUROR: Because I don't have solid facts on either side.

MR. FINK: What if you learned that the person who --

THE COURT: Counsel stay away from hypotheticals, ask them if they can fairly weigh whatever testimony they do hear.

MR. FINK: Well, Mr. Walcott, can I just use that same excuse, Judge.

THE COURT: No.

MR. FINK: It's possible the Judge indicated that you may not hear from my client. Is there anyone here who will hold it against him if they didn't hear from him. Mr. Lam?

PROSPECTIVE JUROR: No.

MR. FINK: Mr. Richardson?

PROSPECTIVE JUROR: No.

MR. FINK: Is there anyone? No.

I just would ask just to go through each one of you a particular hobby you might have, starting with you Mr. Walcott, if you have any.

PROSPECTIVE JUROR: Dominos, cards.

PROSPECTIVE JUROR: Motorcycles.

PROSPECTIVE JUROR: Like to work on cars.

PROSPECTIVE JUROR: Reading.

PROSPECTIVE JUROR: Dancing.

PROSPECTIVE JUROR: Plants and gardening.

PROSPECTIVE JUROR: Motorcycles.

PROSPECTIVE JUROR: My work is my hobby.

MR. FINK: Antique road show at all?

PROSPECTIVE JUROR: Carpentry, refurbishing antique furniture, that's me.

PROSPECTIVE JUROR: Collecting coins.

PROSPECTIVE JUROR. Reading.

PROSPECTIVE JUROR: Plants.

PROSPECTIVE JUROR: Traveling and shopping.

PROSPECTIVE JUROR: Reading and watching TV.

MR. FINK: Mr. Alexander, I may have misheard you. Do you feel you can be a fair and impartial juror on this case?

PROSPECTIVE JUROR: No. I told the Judge I couldn't.

MR. FINK: I wanted to make sure I heard you correctly.

And Miss Rotolo, I couldn't hear what it was that you do or did.

PROSPECTIVE JUROR: I'm a housewife. I was a bookkeeper.

MR. FINK: Thank you all very much. Thank you.

THE COURT: Ladies and gentlemen, we're going to take a 10 or 15 minutes break while the attorneys make their decision. I'll request the group out there, let this group leave first. You're not jurors, yet some of you here will be selected as jurors in this case and some of you later in the day out there you will be selected as jurors in this case. You've just heard a bare bones outline what the case is about. You have heard no evidence yet.

So since some of you are going to be jurors, keep an open mind, don't discuss the case at all among yourselves. Don't form any opinions concerning your guilt or innocence of this defendant, and if anybody attempts to talk to you about this case, since you are potential jurors, let me know immediately through the officers.

Also a word about the attorneys. If they see you outside or in the elevator if you're selected as

jurors in this case, they're not even going to say hello to you. Don't feel they're being rude, they have an ethical obligation not to have contact with you. We will have you back here in about 15 minutes. Those of you chosen, I'll give you instructions and we'll take our luncheon recess. Let this group leave first.

(Whereupon the panel of prospective jurors exit the courtroom.)

(Whereupon a luncheon recess was taken.)

THE CLERK: Parties, are you ready?

MR. FINK: Bring the defendant back out.

THE COURT: Counsel, let me know when you're ready.

MS. GOLOWA: Ready.

MR. FINK: Ready.

THE CLERK: From one through 12, People for cause.

MS. GOLOWA: Yes. Juror number one, Mr. Walcott, told the Court that he could not assure the Court that he was able to listen to a witness with prior convictions.

MR. FINK: Judge, my objection is I know he did discuss the prior conviction. I thought after further questioning he made it clear that he would deal with someone with a prior conviction.

THE COURT: Challenge for cause is denied.

THE CLERK: People one through 12, any other challenge for cause?

MS. GOLOWA: Juror number three, Mr. Alexander specifically told the Court he could not be fair.

THE COURT: Any objection?

MR. FINK: No objection.

THE COURT: He's removed for cause.

MS. GOLOWA: And juror number eight, Miss Watson, also told the Court she was not fair. She could be fair.

MR. FINK: No objection.

THE COURT: She's removed for cause.

Number eight. Number nine already excused by the Court. For the record, she indicated that she believed she knew the defendant. What was her name?

MS. GOLOWA: Ruth Sparks.

THE COURT: Miss Sparks was removed for cause by the Court indicating that she might have known the defendant. Go ahead.

THE CLERK: Defense. People that's all for you.

MS. GOLOWA: Yes.

THE CLERK: Defense, one through 12 for cause.

MR. FINK: None.

THE CLERK: People, one through 12 peremptorily?

MS. GOLOWA: Number one, Mr. Walcott.

Number four, Miss Jervis.

Number five, Miss Sebro. That's it.

THE CLERK: Defense, one through 12 peremptorily?

MR. FINK: Number two, Mr. Townsend.

Number six, Miss Young.

Number seven, Miss Kiarney.

Number 11 and number 12.

THE COURT: We have one juror.

THE CLERK: Therefore Eleanor Chapman will become juror number one.

People, 13 and 14 for cause?

MS. GOLOWA: Nothing for cause.

THE CLERK: Defense?

MR. FINK: Nothing for cause.

THE CLERK: Thirteen, 14 perempts?

MS. GOLOWA: Thirteen.

THE CLERK: Defense, number 14.

MR. FINK: No challenge.

THE CLERK: Felix Torres will become juror number two.

THE COURT: Okay. What we'll do is bring these

two in and swear them in, and I'll have them return at 10:00 on Monday. The people that are excused you can tell them they can return to the central jury room after lunch and then tell the rest of them to come back at 2:30. Not to come in until they're invited to do so by an officer, okay.

People have 11 remaining. Defense has ten remaining.

(The two jurors enter the courtroom).

THE COURT: Wait there for a second. Miss Chapman, take seat number one. And, sir, you take seat number two. Then I'll give you some instructions. Put them in the box.

Mr. Sweeney, please swear in the two jurors.

THE CLERK: Jurors in the box, please, raise and raise your right hand.

(Whereupon the two jurors were duly sworn by the Clerk of the Court.)

THE COURT: Please have a seat for just a couple of minutes. I have some instructions for you. You're both now sworn jurors in this case. Obviously what we will do this afternoon is try to get the rest of the jury.

As I indicated, the Court has other matters to take care of tomorrow. So you are now sworn jurors in

this case. You're going to be excused until ten a.m. on Monday morning. When you leave this courtroom, the officer will take you to the fourth floor. There is a jury room there that has my name on the door. That will be the room for the time being. We're going to try to get a room on this floor. That's the room that you will report to. We'll try to have the rest of the jury meet you there at that time. And that's the jury deliberation room is where you go after every brake where you go after your luncheon recess and where you come to work each morning usually about 9:30 or 10:00.

Now, that you're sworn jurors in this case, let me give you some instructions. Until the time comes after you hear all the witnesses and see and hear all of the evidence, at that time only can you discuss anything about this case with each other or anyone else. Until that time you can discuss anything you want, the Yankees the Mets, the world situation, the stock market, except this case.

You have to keep an open mind and not discuss the case not until you hear all of the evidence in the case and my charge on the law.

Now, the location here is the A train at Hoyt Schermerhorn. If you have to take the train, that's fine. What we don't want done is any independent

investigation on this case on your own. Judge this case from what you hear and see in the courtroom. You get credit for jury service tomorrow, by the way.

Also if anyone in any way, shape or form tries to talk to you about this case, you let me know immediately through one of the officers. You two are excused until ten a.m. Monday morning. Follow the officers, have a good weekend.

Anything for the record before we take our luncheon recess?

MR. FINK: No.

MS. GOLOWA: No.

THE COURT: 12:30.

(Whereupon a luncheon recess was taken)

THE CLERK: Recalling the case on trial defendant is present. Attorneys are present.

THE COURT: Anything for the record before we continue with jury selection?

MR. FINK: No, Your Honor.

MS. GOLOWA: No, Your Honor.

THE COURT: You can bring them in.

(Whereupon the panel of prospective jurors enter the courtroom.)

MS. GOLOWA: Judge, could we approach for a minute?

THE COURT: Come on up.

(Whereupon a bench conference was held off the record.)

THE COURT: Good afternoon, ladies and gentlemen, we'll continue with jury selection. You will find that these latter rounds take a lot shorter period of time because I don't have to do the introduction on the law.

Mr. Sweeney, will you please fill the jury box again, follow the instructions of the Clerk and the Court Officer.

THE CLERK: Ladies and gentlemen, same procedure as before. Remember to bring your belongings. Andrzej, A-N-D-R-Z-E-J. T. Simm, S-I-M-M, seat number one.

Anwar, A-N-W-A-R. Sarkar, S-A-R-K-A-R, seat two.

Fernando, F-E-R-N-A-N-D-O. Allen, A-L-L-E-N, seat number three.

Irina, I-R-I-N-A. Goland, G-O-L-A-N-D, seat four.

Mary, M-A-R-Y, Blackmon, B-L-A-C-K-M-O-N, seat five.

Sheffield, S-H-E-F-F-I-E-L-D. D. Clark, C-L-A-R-K, seat number six.

Barbara, B-A-R-B-A-R-A. T. Mark, M-A-R-K, seat seven.

Melissa, M-E-L-I-S-S-A. Maldonado. M-A-L-D-O-N-A-D-O, seat eight.

No answer, Judge.

THE COURT: Send her card back.

THE CLERK: Melissa Maldonado.

PROSPECTIVE JUROR: Right here.

THE CLERK: Seat eight.

Joanna, J-O-A-N-N-A M. Vega, V-E-G-A, seat number nine.

Elizabeth, E-L-I-Z-A-B-E-T-H. A. Higgins, H-I-G-G-I-N-S, seat ten.

Winston, W-I-N-S-T-O-N, P. Chambers, C-H-A-M-B-E-R-S, seat 11.

THE COURT: Not present.

THE CLERK: Tisaia, T-I-S-A-I-A. L. H-A-R-V-E-Y, seat 11.

Kim, K-I-M. Holston, H-O-L-S-T-O-N, seat 12.

Roberta, R-O-B-E-R-T-A, D. Riddick, R-I-D-D-I-C-K, seat 13.

Milagros, M-I-L-A-G-R-O-S Duran, D-U-R-A-N, seat number 14.

THE COURT: Good afternoon to those of you now in the box. As indicated, the process will take a lot

shorter period of time since I don't have to do the introduction on the law. If you are selected as a juror in this case, you're going to be asked to bring your common sense and human experience into the courtroom. To listen to the evidence that is presented, to weigh it and evaluate it, judge the credibility of witnesses and then you're going to be called upon to deliberate. That means to discuss the evidence with your fellow jurors with a view towards reaching a verdict or verdicts in this case.

Is there anyone among you who cannot or will not participate in that process. Come up to the side-bar.

THE COURT: One at a time, please. First row first.

This is Mr. Clark coming up.

(Whereupon the following side-bar discussion took place between counsel, the Court and a prospective juror.)

THE COURT: You believe you know the defendant?

PROSPECTIVE JUROR: Yes, I do.

THE COURT: You're excused. You didn't discuss your knowledge?

PROSPECTIVE JUROR: No.

(Prospective juror excused).

THE COURT: This is Miss Riddick.

I've seen her quite a few times.
You didn't discuss that with anybody, did you?
PROSPECTIVE JUROR: No.
THE COURT: You're excused, ma'am. Thanks.
(Prospective juror excused.)
(Whereupon the following took place in open court.)
THE CLERK: Timothy, T-I-M-O-T-H-Y. Reed, R-E-E-D, seat six.
Anthony, A-N-T-H-O-N-Y Ortiz, O-R-T-I-Z, seat number 13.
THE COURT: Mr. Reed, Mr. Ortiz, welcome both of you. Can you participate in the process? Either of you have any difficulty?
Do any of you know any of the parties? You can indicate in the affirmative by raising your hands?
Do you know any of the parties, the defendant or the attorneys or anything about this case?
Again the alleged incident November 29, 2001 on the A train at approximately at the Hoyt Schermerhorn station in Brooklyn.
Collective negative response.
I mentioned the basic principles of criminal law that apply to all criminal trials. That the defendant, Mr. Davis is presumed to be innocent until

proved guilt beyond a reasonable doubt. The burden of proving him guilty beyond a reasonable doubt rests with the prosecution, with the People. It never shifts to the defendant. Defendant doesn't have to prove or disprove anything. And if later in the trial a determination is made by he and his attorney not to have him testify, the fact that he doesn't testify, cannot be held against him. Do any of you have any difficulty following those principles of law?

Also I listed among the witnesses quite a few police officers. I think I mentioned there are over 30,000 police officers in the City of New York and they come in all different shapes and degrees of credibility like everybody else in life.

Is there anyone among you because of positive or negative experiences with the police or because you have a close relationship with police officers feel that you could not weigh and evaluate police testimony just like the testimony of any other witnesses?

Any of you feel that way? Again a collective negative response.

Have any of you served as jurors before either in a criminal case a civil case or as a member of a grand jury? Anyone with prior jury experience? I'll start with the first row first.

Miss Blackmon.

PROSPECTIVE JUROR: Yes.

THE COURT: What type of case, ma'am?

PROSPECTIVE JUROR: I've served on criminal and civil.

THE COURT: Let's deal with the criminal cases first. How long ago?

PROSPECTIVE JUROR: That was like maybe `90s.

THE COURT: Do you remember what the charge was?

PROSPECTIVE JUROR: Rape.

THE COURT: And without telling us what the verdict might have been, did the jury deliberate and reach a verdict?

PROSPECTIVE JUROR: Yes, we did.

THE COURT: I can tell you the law has changed a lot. I've been doing this since 1973. We have to keep up with the law. Whatever law you might have heard in that case likely has changed a little bit over the years. Can you do that? Can you follow the law as I give it to you?

PROSPECTIVE JUROR: Yes, I can.

THE COURT: And your civil service, how long ago was that?

PROSPECTIVE JUROR: Like five years ago.

THE COURT: Was the case settled or jury deliberated?

PROSPECTIVE JUROR: No, it was settled.

THE COURT: Is there anything about either experience that would not enable you to be a fair and impartial juror in this case?

PROSPECTIVE JUROR: None.

THE COURT: Thank you, ma'am. Anyone else in the first row prior jury experience? Going to the second experience. Miss Mark?

PROSPECTIVE JUROR: Yes.

THE COURT: Type of case?

PROSPECTIVE JUROR: It was like insurance.

THE COURT: That's a civil case.

About how long ago was it?

PROSPECTIVE JUROR: It was in `99, May `99.

THE COURT: And did the jury deliberate or was the case settled?

PROSPECTIVE JUROR: The case was settled.

THE COURT: Can you set aside whatever law you might have heard and follow the criminal law as I give it to you here?

PROSPECTIVE JUROR: Beg your pardon.

THE COURT: Can you set aside whatever law you might have heard and follow the criminal law as I give it

to you here?

PROSPECTIVE JUROR: Yes, I could.

THE COURT: Continuing along the second row, prior jury experience.

Miss Higgins, type of case.

PROSPECTIVE JUROR: Civil case.

THE COURT: How long ago?

PROSPECTIVE JUROR: `99.

THE COURT: Settled or was the, did the jury deliberate?

PROSPECTIVE JUROR: Settled.

THE COURT: Again, is there anything about that experience that would not enable you to follow the criminal law the way I give it to you in this case?

PROSPECTIVE JUROR: No.

THE COURT: Continuing along the second row. Miss Holston, type of case?

PROSPECTIVE JUROR: Both criminal and civil.

THE COURT: The criminal case, how long ago was it?

PROSPECTIVE JUROR: I believe in `96.

THE COURT: And do you remember the charge?

PROSPECTIVE JUROR: Yes, robbery.

THE COURT: Was it a robbery case?

PROSPECTIVE JUROR: Yes.

THE COURT: This is a robbery case. Without telling us what the verdict might have been, did the jury deliberate?

PROSPECTIVE JUROR: No, we did not.

THE COURT: I should say, was there a verdict reached or?

PROSPECTIVE JUROR: A plea.

THE COURT: Now, can you set aside that similar type of case, can you set aside whatever law you might have heard in that matter and take the law the way I give it to you here?

PROSPECTIVE JUROR: Yes.

THE COURT: Is there anything about the experience of that case that would not enable you to be a fair juror here?

PROSPECTIVE JUROR: No.

THE COURT: How long ago was the civil service?

PROSPECTIVE JUROR: I believe that might have been `90.

THE COURT: Was it settled or did the jury deliberate?

PROSPECTIVE JUROR: Two parts. First part was deliberated. Second part was settled.

THE COURT: Thank you.

Anyone else, prior jury experience? I'm sorry,

sir. Mr. Ortiz, type of case?
PROSPECTIVE JUROR: Criminal.
THE COURT: Charge?
PROSPECTIVE JUROR: Attempted murder.
THE COURT: About how long ago was it?
PROSPECTIVE JUROR: 1999.
THE COURT: And did the jury deliberate and reach a verdict?
PROSPECTIVE JUROR: Yes.
THE COURT: Anything about that experience that would not enable you to be a fair juror here?
PROSPECTIVE JUROR: No.
THE COURT: Take the law the way I give it to you in this matter?
PROSPECTIVE JUROR: Yes.
THE COURT: Anyone among you or close friends or relatives been the victim of a crime? Burglary, robbery, auto theft, anything of that nature?
I'll start with the first row first. Miss Goland, yourself or someone close to you?
PROSPECTIVE JUROR: Both. Two different cases.
THE COURT: Start with you first?
PROSPECTIVE JUROR: A robbery.
THE COURT: Was a weapon involved?
PROSPECTIVE JUROR: No.

THE COURT: About how long ago was it?

PROSPECTIVE JUROR: Five years.

THE COURT: Just a little louder?

PROSPECTIVE JUROR: Five.

THE COURT: Reported at the time to the police?

PROSPECTIVE JUROR: Yes.

THE COURT: Anyone arrested?

PROSPECTIVE JUROR: No.

THE COURT: Satisfied the police did what they could do?

You're not sure; you're not satisfied?

PROSPECTIVE JUROR: No.

THE COURT: Are you going to hold it against the district attorney in this case that the police couldn't solve that case?

PROSPECTIVE JUROR: No.

THE COURT: Anything about that experience that would not enable you to be a fair and impartial juror in this case, if selected?

PROSPECTIVE JUROR: If it wouldn't happen it would be better. If it never happened, I think I would be more --

THE COURT: If I didn't go to Vietnam, I'll feel better about the war in Iraq too. You have to separate out, it's a traumatic experience to be the

victim of a robbery and I can't ask you to forget it. What I can ask you to do is evaluate and judge this case on its own merit. Do you think you can do that? If you're not sure, tell us.

PROSPECTIVE JUROR: I'm not sure.

THE COURT: I appreciate your candor. Continuing along the first row, yourself or somebody close to you the victim of a crime. Mr. Reed, yourself or someone close to you?

PROSPECTIVE JUROR: Both.

THE COURT: Start with you first. What was the crime?

PROSPECTIVE JUROR: Assault and robbery.

THE COURT: Was a weapon involved?

PROSPECTIVE JUROR: Yes.

THE COURT: Reported to the police?

PROSPECTIVE JUROR: Yes.

THE COURT: Anybody arrested?

PROSPECTIVE JUROR: No.

THE COURT: Satisfied the police did what they could do?

PROSPECTIVE JUROR: No.

THE COURT: Something about that experience that would not enable you to give a fair trial here?

PROSPECTIVE JUROR: Probably.

THE COURT: Anyone else in the first row. Going to the second row.

Miss Mark, yourself or somebody close to you?

PROSPECTIVE JUROR: Myself. I was robbed in my house. They broke into my house.

THE COURT: Was property taken from the house?

PROSPECTIVE JUROR: Yes.

THE COURT: Were you present when it happened?

PROSPECTIVE JUROR: No.

THE COURT: That's a burglary. Robbery is the forcibly taking of property from the person?

PROSPECTIVE JUROR: Okay, okay.

THE COURT: You were the victim of a burglary, was it reported to the police?

PROSPECTIVE JUROR: Yes.

THE COURT: Anyone arrested?

PROSPECTIVE JUROR: Yes.

THE COURT: Are you satisfied -- did it happen in Brooklyn?

PROSPECTIVE JUROR: It happened -- no, it happened in Queens.

THE COURT: Are you satisfied with the police and the District Attorney's Office did the right thing in the case?

PROSPECTIVE JUROR: Yes, I was satisfied.

THE COURT: Is there anything about that experience that would not enable you to give both sides a fair trial here?

PROSPECTIVE JUROR: No, never.

THE COURT: Continuing along the second row, yourself or someone close to you the victim of a crime. Miss Vega, yourself or someone close to you?

PROSPECTIVE JUROR: Myself.

THE COURT: And what was the crime?

PROSPECTIVE JUROR: Robbery.

THE COURT: Was a weapon involved?

PROSPECTIVE JUROR: Yes.

THE COURT: And anyone arrested?

PROSPECTIVE JUROR: Um-hum.

THE COURT: Prosecuted?

PROSPECTIVE JUROR: Yes.

THE COURT: Did it happen in Brooklyn?

PROSPECTIVE JUROR: In Florida.

THE COURT: Are you satisfied with the police and the prosecutor did the right thing in the case?

PROSPECTIVE JUROR: Yes.

THE COURT: About how long ago was it?

PROSPECTIVE JUROR: Two years ago.

THE COURT: Anything about that experience that will not enable you to be fair to both sides here?

PROSPECTIVE JUROR: No.

THE COURT: Thank you.

Continuing along the second row. Miss Higgins, yourself or someone close?

PROSPECTIVE JUROR: Myself.

THE COURT: What was the crime?

PROSPECTIVE JUROR: Beaten up and robbed.

THE COURT: Was a weapon involved?

PROSPECTIVE JUROR: Yes.

THE COURT: What was the weapon?

PROSPECTIVE JUROR: A blackjack.

THE COURT: About how long ago was it?

PROSPECTIVE JUROR: Thirteen years.

THE COURT: Reported to the police?

PROSPECTIVE JUROR: Yes.

THE COURT: Anyone arrested?

PROSPECTIVE JUROR: No.

THE COURT: Happened in New York?

PROSPECTIVE JUROR: Um-hum.

THE COURT: You satisfied the police did what they could do?

PROSPECTIVE JUROR: Yeah.

THE COURT: Anything about that experience that would not enable you to give both sides a fair trial here?

PROSPECTIVE JUROR: No.

THE COURT: Continuing along the second row. Miss Harvey, yourself or someone close to you?

PROSPECTIVE JUROR: Both.

THE COURT: Start with you first. What was the crime?

PROSPECTIVE JUROR: Car theft twice.

THE COURT: Reported to the police?

PROSPECTIVE JUROR: Yes.

THE COURT: Were the vehicle recovered?

PROSPECTIVE JUROR: Yes.

THE COURT: Anyone arrested?

PROSPECTIVE JUROR: No.

THE COURT: Satisfied the police did what they could do?

PROSPECTIVE JUROR: Yes.

THE COURT: Anything about either experience that would not enable you to give a fair trial here?

PROSPECTIVE JUROR: No.

THE COURT: And you said somebody close to you was the victim, who was that?

PROSPECTIVE JUROR: My mother's face was slashed with a razor.

MR. FINK: Couldn't hear.

THE COURT: Somebody's face was slashed with a

razor?

PROSPECTIVE JUROR: My mother's.

THE COURT: That's a horrendous experience.

Anyone arrested?

PROSPECTIVE JUROR: Yes.

THE COURT: Prosecuted?

PROSPECTIVE JUROR: Yes.

THE COURT: Happened in Kings County?

PROSPECTIVE JUROR: Yes.

THE COURT: Are you satisfied with the police and the prosecutor did the right thing?

PROSPECTIVE JUROR: Yes.

THE COURT: Now, the District Attorney doesn't get credit for that. Can you judge this case based on the weight of what you hear and see in this courtroom?

PROSPECTIVE JUROR: Yes.

THE COURT: Anyone else? Miss Holston, yourself or someone close to you?

PROSPECTIVE JUROR: Myself.

THE COURT: What was the crime?

PROSPECTIVE JUROR: Robbery.

THE COURT: Was a weapon involved?

PROSPECTIVE JUROR: Yes.

THE COURT: How long ago was it?

PROSPECTIVE JUROR: Sixteen years.

THE COURT: Reported to the police?
PROSPECTIVE JUROR: Yes.
THE COURT: Anyone arrested?
PROSPECTIVE JUROR: Yes.
THE COURT: Prosecuted?
PROSPECTIVE JUROR: No.
THE COURT: Are you satisfied that the police and the District Attorney's Office did the right thing in the case?
PROSPECTIVE JUROR: Yes.
THE COURT: Was there anything about that experience that would not enable you to give both sides a fair trial here?
PROSPECTIVE JUROR: No.
THE COURT: Thank you. Anyone else? Okay. Yes, sir, going back to Mr. Simm?
PROSPECTIVE JUROR: My son was robbed. My son was robbed in front of my house entrance.
THE COURT: And reported to the police?
PROSPECTIVE JUROR: Yes, police.
THE COURT: Anyone arrested?
PROSPECTIVE JUROR: Nobody.
THE COURT: You satisfied the police did what they could do?
PROSPECTIVE JUROR: Yeah.

THE COURT: Is there anything about that experience that would not enable you to give a fair trial here?

PROSPECTIVE JUROR: I don't think so.

THE COURT: Are you sure?

PROSPECTIVE JUROR: But I have a question.

THE COURT: Go ahead.

PROSPECTIVE JUROR: I was hit by someone on the subway like two, three months ago in the middle of the night, and I report it to Transit Police. It was two subway stops from here, I don't know, is kind of crime I was reading a newspaper and I was hit.

THE COURT: So you were a victim?

PROSPECTIVE JUROR: Yeah.

THE COURT: Okay. Anyone arrested?

PROSPECTIVE JUROR: No.

THE COURT: Did you report it to the police?

PROSPECTIVE JUROR: I report it to Transit Police, yes.

THE COURT: Are you satisfied they did what they could do?

PROSPECTIVE JUROR: Yes.

THE COURT: Well, is there anything about that experience that is not -- is going to cause you to hold it against the defendant or in favor of the People or the

other way around? Can you judge this case based on its own merit?

PROSPECTIVE JUROR: I think I supposed to report another thing.

THE COURT: I'm sorry?

PROSPECTIVE JUROR: I'm supposed to report another thing. I have a troubled neighbor, and I have to call police a couple of times. It's not a crime, it's just a noise.

THE COURT: Anyone among you or a close friend or relative been arrested or convicted of a crime or have a matter pending a criminal matter pending in any jurisdiction and you can answer in private, if you wish. I saw one hand go up in the second row.

Miss Maldonado, you want to come up?

(Whereupon the following side-bar discussion took place between counsel, the Court and a prospective juror.)

PROSPECTIVE JUROR: My brother, he was convicted of possession and for shoplifting.

THE COURT: In Brooklyn?

PROSPECTIVE JUROR: Virginia.

THE COURT: Is there anything about that experience that would cause you not to be a fair juror here?

PROSPECTIVE JUROR: No.
THE COURT: You think he was treated fairly?
PROSPECTIVE JUROR: Um-hum.
THE COURT: Thank you.
Anyone else? This is Miss Duran.
THE COURT: Yes, ma'am?
PROSPECTIVE JUROR: I have a past experience from my mother, cut her face of my mother.
THE COURT: You don't think you can be a fair juror?
PROSPECTIVE JUROR: No.
THE COURT: Just go back and have a seat.
Miss Vega, you want to come up now, please.
THE COURT: Yes, ma'am.
PROSPECTIVE JUROR: My ex-boyfriend was arrested for attempted robbery.
THE COURT: Do you think he was treated fairly?
PROSPECTIVE JUROR: Yeah.
THE COURT: Is there anything about that experience that would not enable you to give both sides a fair trial?
PROSPECTIVE JUROR: No.
MS. GOLOWA: I have a question for her. Was that Brooklyn here?
PROSPECTIVE JUROR: Yeah.

MS. GOLOWA: How long ago?

PROSPECTIVE JUROR: About six years ago.

MS. GOLOWA: Was he convicted?

PROSPECTIVE JUROR: Yes.

(Whereupon the following took place in open court.)

THE COURT: Anyone else?

Anyone among you or a close friend or relative work for law enforcement in any way, shape or form or the Criminal Justice System, Police Department, Department of Corrections, Legal Aid Society, lawyers who do criminal work. Anyone in the first row? Yes.

Mr. Reed, who do you know?

PROSPECTIVE JUROR: I have a few friends who are detectives in the 76th.

THE COURT: You discuss their work with them?

PROSPECTIVE JUROR: Occasionally.

THE COURT: You feel that because of that contact that you would not be to judge police testimony like any other witness?

PROSPECTIVE JUROR: I can't say that for sure.

THE COURT: Anyone else in the first row? Going back to Mr. Allen, who do you know?

PROSPECTIVE JUROR: My brother, he's a retired correction officer.

THE COURT: Is there anything about that relationship that would not enable you to judge police testimony like any other witness?

PROSPECTIVE JUROR: Not really.

THE COURT: Okay. Who else, Miss Goland? Who do you know?

PROSPECTIVE JUROR: My husband is a lawyer.

THE COURT: Does he do criminal work?

PROSPECTIVE JUROR: No.

THE COURT: Anyone else in the first row?

Miss Blackmon, who do you know?

PROSPECTIVE JUROR: My brother-in-law, he's a sheriff.

THE COURT: Is there anything about that relationship that will not enable you to judge police testimony like any other?

PROSPECTIVE JUROR: No, not at all.

THE COURT: Anyone else in the first row.

Going to the back row. Miss Maldonado, who do you know.

PROSPECTIVE JUROR: My sister and brother-in-law, both in corrections.

THE COURT: Anything about that relationship that would not enable you to judge police testimony like any other testimony?

PROSPECTIVE JUROR: No.

THE COURT: Beginning along the second row. Miss Higgins, who do you know?

PROSPECTIVE JUROR: My brother-in-law is a retired city cop.

THE COURT: Anything about that relationship would not enable you to fairly judge testimony of police officers?

PROSPECTIVE JUROR: No.

THE COURT: Continuing along to Miss Holston. Who do you know, ma'am?

PROSPECTIVE JUROR: My cousin, she's a correction's officer in Riker's.

THE COURT: Same question. Anything about that experience would not enable you to weigh and evaluate police testimony like any other witness?

PROSPECTIVE JUROR: No.

THE COURT: Anyone else? Yes, Mr. Ortiz, who do you know?

PROSPECTIVE JUROR: My uncle is a lawyer.

THE COURT: Does he do criminal work?

PROSPECTIVE JUROR: Yeah.

THE COURT: Here in Brooklyn?

PROSPECTIVE JUROR: No.

THE COURT: Do you ever discuss his work with

him?

PROSPECTIVE JUROR: No.

THE COURT: Anything about that relationship that would not enable you to judge this case fairly?

PROSPECTIVE JUROR: No.

THE COURT: Anyone among you have difficulty speaking or understanding the English language?

Now, I'm going to go through the rows and ask the same questions I asked the last group, what area of Brooklyn you reside in. If you're employed, I'll ask what you do for a living. If there are other adults in your household who are employed, I'll ask you what they do for a living.

You've heard the type of questions I've been asking and that the lawyers have been asking and what I want you to do is each of you to search your own minds and your own conscious and see if there is any reason you would volunteer to us to, that hasn't already been discussed, why you could not be a fair and impartial juror in this case.

Mr. Simm, the area of Brooklyn you reside in?

PROSPECTIVE JUROR: I didn't follow.

THE COURT: Where? Brooklyn, do you live?

PROSPECTIVE JUROR: I live in Canarsie.

THE COURT: Are you employed, sir, do you work?

PROSPECTIVE JUROR: I work in Manhattan.

THE COURT: What type of work do you do?

PROSPECTIVE JUROR: Publishing operator.

THE COURT: Any other adults in your household who are employed, who work?

PROSPECTIVE JUROR: My wife.

THE COURT: What does she do, sir?

PROSPECTIVE JUROR: A professor biologist in Columbia University.

THE COURT: Any reason you feel you could not be a fair and impartial juror if you were selected?

PROSPECTIVE JUROR: No.

THE COURT: Mr. Sarkar, the area of Brooklyn you live in?

PROSPECTIVE JUROR: Greenpoint.

THE COURT: And are you employed, sir?

PROSPECTIVE JUROR: Yes.

THE COURT: What type of work do you do?

PROSPECTIVE JUROR: Sales associate.

THE COURT: Any other adults in your household who are employed?

PROSPECTIVE JUROR: No.

THE COURT: Any reason you would not be a fair juror if you were selected?

PROSPECTIVE JUROR: No.

THE COURT: Mr. Allen, the area of Brooklyn you reside in?

PROSPECTIVE JUROR: Flatbush Avenue.

THE COURT: Are you employed, sir?

PROSPECTIVE JUROR: Yes, sir.

THE COURT: What type of work do you do?

PROSPECTIVE JUROR: Food service.

THE COURT: And any other adults in your household employed?

PROSPECTIVE JUROR: No.

THE COURT: Any reason that you would not be a fair and impartial juror if you were selected?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, sir.

Miss Goland, the area of Brooklyn you reside in.

PROSPECTIVE JUROR: Sheepshead Bay.

THE COURT: Are you employed outside of the home?

PROSPECTIVE JUROR: Yes.

THE COURT: What type of work do you do?

PROSPECTIVE JUROR: Accountant.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: My house?

THE COURT: What does he do?

PROSPECTIVE JUROR: He's a lawyer.

THE COURT: Any reason other than what you have already mentioned to us why you feel you could not be a fair and impartial juror?

PROSPECTIVE JUROR: No.

THE COURT: Thank you.

Miss Blackmon, the area of Brooklyn you reside in?

PROSPECTIVE JUROR: Williamsburg.

THE COURT: Are you employed outside of the home?

PROSPECTIVE JUROR: Yes.

THE COURT: What do you do?

PROSPECTIVE JUROR: I'm with the Board of Education, a cook.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: No.

THE COURT: Any reason you could not be a fair and impartial juror if you were selected?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, ma'am.

Mr. Reed, the area of Brooklyn you reside in.

PROSPECTIVE JUROR: Carroll Gardens.

Proceedings

THE COURT: Are you employed, sir?
PROSPECTIVE JUROR: Self-employed.
THE COURT: What type of work do you do?
PROSPECTIVE JUROR: Programing.
THE COURT: Any other adults in your household employed?
PROSPECTIVE JUROR: No.
THE COURT: Other than the reasons you mentioned why you could not be fair?
PROSPECTIVE JUROR: No, sir.
MR. FINK: I couldn't hear what it is that you do?
PROSPECTIVE JUROR: I'm self-employed, a programmer.
THE COURT: The area of Brooklyn?
PROSPECTIVE JUROR: 61 area.
THE COURT: Employed outside of the home?
PROSPECTIVE JUROR: My job is school.
THE COURT: You work at a school?
PROSPECTIVE JUROR: Yes.
THE COURT: What type of work?
PROSPECTIVE JUROR: School aide.
THE COURT: Any other adults living in your house who are employed?
PROSPECTIVE JUROR: No.

Proceedings

THE COURT: Any reason other than what you have already told us why you could not be fair?

PROSPECTIVE JUROR: No.

THE COURT: Thank you, ma'am.

Going to the back row. Miss Mark, the area of Brooklyn you reside in.

PROSPECTIVE JUROR: Midwood.

THE COURT: And are you employed outside of the home?

PROSPECTIVE JUROR: Yes, I am.

THE COURT: What do you do, ma'am?

PROSPECTIVE JUROR: I work as a staff coordinator for a nursing registry.

THE COURT: Any other adults in your household who are employed?

PROSPECTIVE JUROR: Yeah. My son is a computer programmer.

THE COURT: Any reason that you would not be a fair juror, if you were selected?

PROSPECTIVE JUROR: No.

THE COURT: Thank you.

Miss Maldonado, the area of Brooklyn you reside in.

PROSPECTIVE JUROR: Williamsburg.

THE COURT: Are you employed outside of the

home?

PROSPECTIVE JUROR: I work part-time at a doctors's office.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: Yes. My brother he works as a laborer.

THE COURT: Any reason that you would not be a fair and impartial juror, if you were selected?

PROSPECTIVE JUROR: No.

THE COURT: Thank you.

Miss Vega, the area of Brooklyn you live in?

PROSPECTIVE JUROR: Downtown.

THE COURT: Any other adults employed outside of the home?

PROSPECTIVE JUROR: No.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: My grandmother.

THE COURT: What does she do?

PROSPECTIVE JUROR: She's a teacher.

THE COURT: What grade level?

PROSPECTIVE JUROR: She's a substitute teacher so it varies.

THE COURT: Are you a student?

PROSPECTIVE JUROR: Um-hum.
THE COURT: What are you studying?
PROSPECTIVE JUROR: Right now business and marketing.
THE COURT: Where do you go to school?
PROSPECTIVE JUROR: Brooklyn College.
THE COURT: Thank you.
Miss Higgins, the area of Brooklyn you reside in?
PROSPECTIVE JUROR: Sunset Park.
THE COURT: Are you employed outside of the home?
PROSPECTIVE JUROR: Yes, self employed.
THE COURT: What type of work do you do?
PROSPECTIVE JUROR: Autograph artist service, a contract as an archivist.
THE COURT: Any other adults employed?
PROSPECTIVE JUROR: My husband is a graphic artist.
THE COURT: Any reason that you would not make a fair juror, if you were selected?
PROSPECTIVE JUROR: No.
THE COURT: Thank you, ma'am.
Miss Harvey, the area of Brooklyn you reside in?

PROSPECTIVE JUROR: Bedford Sty.

THE COURT: Employed outside of the home?

PROSPECTIVE JUROR: Yes.

THE COURT: What do you do, ma'am?

PROSPECTIVE JUROR: An engineer.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: My children's father.

THE COURT: What does he do?

PROSPECTIVE JUROR: A field technician.

THE COURT: And any reason you would not make a fair juror, if selected?

PROSPECTIVE JUROR: No.

THE COURT: Thank you.

Miss Holston, the area of Brooklyn you reside in?

PROSPECTIVE JUROR: Bedford Stuyvesant.

THE COURT: Employed outside the home?

PROSPECTIVE JUROR: Worker's Compensation case manager.

THE COURT: Any other adults in your household employed?

PROSPECTIVE JUROR: No.

THE COURT: Any reason you could not be a fair juror?

Voir Dire-People

PROSPECTIVE JUROR: No.

THE COURT: Mr. Ortiz, the area of Brooklyn you reside in?

PROSPECTIVE JUROR: Park Slope.

THE COURT: Are you employed?

PROSPECTIVE JUROR: Recently laid off.

THE COURT: What type of work do you normally do?

PROSPECTIVE JUROR: Banking reconciliation.

THE COURT: Any other adults in your household?

PROSPECTIVE JUROR: No.

THE COURT: Any reason you would not be a fair juror?

PROSPECTIVE JUROR: No.

THE COURT: Thank you.

We'll turn it over to the attorneys for about ten minutes each. Beginning with Miss Golwa.

MS. GOLOWA: Good afternoon, everyone. Well, you know even this morning or it was really early afternoon, I got to talk to the group that was here before you, and I know that you all had to sit here and listen and didn't get to volunteer any answers.

So I'm wondering if anybody, as I was asking questions as we were talking about things, is there anything that's struck anybody here they felt that they

could contribute to or had strong feelings about the questions that we were talking about?

Okay. Then your stuck with me asking you specifically. I want to clarify there were a couple things I was having a hard time hearing. What do you do?

PROSPECTIVE JUROR: I'm laid off. I used to work in a bank.

MR. FINK: I can't hear.

MS. GOLOWA: Used to work at a bank.

And Miss Blackmon, I didn't hear what it is that you do.

PROSPECTIVE JUROR: I'm a cook with the Board of Education.

MS. GOLOWA: Okay. School lunches?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: And Miss Harvey, you're an engineer?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: What kind of engineer?

PROSPECTIVE JUROR: Network engineer.

MS. GOLOWA: Now, Mr. Simm, I had a question there were a couple of situations you said you had been the victim of a crime and the Judge asked you if you were satisfied with the police in, you know, what the police had done and I noticed that you seem a little bit

hesitant about your answers. Kind of said, let's say that I'm satisfied and I'm wondering if there is something there, did you feel they maybe didn't do enough.

PROSPECTIVE JUROR: Well, I -- it's impossible to follow everybody, every suspect.

MS. GOLOWA: So I mean --

PROSPECTIVE JUROR: If, at this point I'm satisfied, but it's impossible I understand the situation.

MS. GOLOWA: If I understand you correctly, you would have been more satisfied had the perpetrators been caught but not blaming it on the police?

PROSPECTIVE JUROR: Of course.

MS. GOLOWA: Okay. Now, did you all hear me talking about the bank robbery and the get away car earlier. So, you know, we talked about the get away driver and the person who is the lookout and the person who is standing up, you know, at the teller with the gun, give me all the money, make sure there are no dye packs. And, you know what we were talking about is the fact that you're going to hear the law from the judge, but in certain situations and the Judge will instruct you on that, that one person can be held responsible for the conduct of another.

MR. FINK: I'm going to object.

THE COURT: Sustained. If it becomes an issue in the trial, I'll give you the law on responsibility for the conduct of another person.

MS. GOLOWA: I'll not go into the specifics how that could happen. Anybody here, if they hear that law from the Judge that follows, they would not be able to reach a verdict that follows that law? Is there anybody that feels that would be -- they can't do that?

Miss Higgins, what do you think about when holding somebody responsible in that kind of situation and I'll elaborate a little bit. You heard there was a gun involved in this case, and I'm going to tell you right now not one person is going to sit here on the witness stand and tell you that Keith Davis had a gun. Nobody is going to say it. Nobody is going to say that he took the property off the victims, but if you hear there's enough evidence here to show that the defendant, in fact, was part of the crime, do you have a problem holding him responsible for actions that were committed by somebody else?

PROSPECTIVE JUROR: I can't speak to that. I'm not in the middle of the trial.

MS. GOLOWA: Certainty you can't give an answer as to whether you would, in the specifics of the fact

matter, whether you would feel that the defendant was responsible in that particular case, but knowing that there is a law like that, how do you feel about that?

MR. FINK: Objection.

THE COURT: Doesn't matter how she feels about it. It's whether she will follow my definition of the law, that's the issue for a prospective juror.

MS. GOLOWA: And can you follow it?

PROSPECTIVE JUROR: I can follow whatever the Judge wants us to follow, yes.

MS. GOLOWA: Is there anybody here that feels they can't follow that kind of a law?

Now, one of the other things I was talking about earlier is that you'll hear from, you know, at least one person who is not a police officer in this case. Somebody who was in fact the victim of a crime and you may hear that that person has a criminal record. That that person has been arrested and convicted of crimes and you know the Judge will give you the instructions on the law as to how you have to consider that. And, you know, nobody is going to stand here and tell you if somebody sits here and says yes, I was convicted, did this and did that, it was illegal, that you don't consider that in whether they're telling the truth. My question for you is, does anybody feel that

they can't separate the testimony of somebody who was --

THE COURT: Doesn't matter how they feel. My instruction on the law will be they can take it into consideration in judging the credibility of a witness, so whether they feel good about it or not, the issue is whether they can follow that instruction.

What I'm saying somebody gets on the stand and says they were convicted of a crime, you can't automatically reject their testimony because of the fact they were previously convicted of a crime, but you can use it as a factor in judging whether you want to believe them. That would be my instruction and the question should be can you following that instruction.

Mr. Simm, do you think you can follow that instruction?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: How about Mr. Sarkar?

PROSPECTIVE JUROR: What are you asking me?

MS. GOLOWA: I'm asking whether you can follow the Judge's instructions on how to consider when you hear that a witness has been convicted of crimes before, and the Judge will instruct on the law how to consider that. You have to decide whether he's telling the truth or not. That doesn't automatically mean that he wasn't the victim of the crime and not telling the truth?

PROSPECTIVE JUROR: I'll follow the law.

MS. GOLOWA: What about you, Miss Mark?

PROSPECTIVE JUROR: I can follow that.

MS. GOLOWA: Miss Maldonado, what do you think, let me ask you a question again. What kind of things would you use to decide whether somebody is telling the truth if you have to make a determination?

PROSPECTIVE JUROR: I would use how they're communicating, what they're saying. I would look at their body language and look at their tone of voice.

MS. GOLOWA: Okay. Does anybody else have any other thing they would use in order to evaluate somebody else's credibility.

PROSPECTIVE JUROR: Facts.

MS. GOLOWA: Like whether what they're telling you makes sense?

PROSPECTIVE JUROR: Factual with anything. If there are some facts, that usually helps.

MS. GOLOWA: Well, I mean you'll hear facts. The question is do you believe the facts as they're being told by the witness?

PROSPECTIVE JUROR: I guess that depends.

MS. GOLOWA: Right now my question is what do you think it depends on?

PROSPECTIVE JUROR: I'm not sure, to be honest.

MS. GOLOWA: It's not always something that you can articulate. Some of the things Miss Maldonado was talking about body language and things like that. What they actually say, what are the facts. Do the facts make sense.

Now, the question is if you hear about facts that you hear from more than one person and they don't have the facts exactly the same way, so does that mean they're not telling the truth at all? What do you think, Mr. Allen.

PROSPECTIVE JUROR: No.

MS. GOLOWA: It doesn't; why not?

PROSPECTIVE JUROR: Because you have to listen carefully to both sides.

THE COURT: Counselor, step back. He'll have to project his voice to you.

PROSPECTIVE JUROR: Listen carefully to both sides and.

MS. GOLOWA: So you're going to listen to all the people that testify carefully, right and my question for you, did you hear this morning I was talking about whether the driver in a car accident was wearing a blue shirt or a brown shirt; do you remember that?

PROSPECTIVE JUROR: Not quite.

MS. GOLOWA: Talking about if there are two

people that witness a car accident and they're asked whether the driver, what color shirt the driver was wearing and one said a blue shirt and the other said a Browne shirt. Now, assuming that we're not talking about a Browne jacket over a blue shirt, something like that, it can't really be both. So the question is if they tell you there was a car accident and each came and testified and one talked about a blue shirt and the other talked about a Browne shirt, would you then say if they can't match on the shirt, they -- can't be they saw a car accident?

PROSPECTIVE JUROR: Not quite.

MS. GOLOWA: Would you have to discount everything that they said?

PROSPECTIVE JUROR: You get confused about colors, yes, you would.

MS. GOLOWA: You'll discount everything they say about the car accident completely?

PROSPECTIVE JUROR: Not because there's a car accident, they confused the colors of the shirt. They can -- not the car accident because it's there.

MS. GOLOWA: They would have to get that correct. Anybody that agrees with Mr. Allen? Anybody else that feels, that thinks the same way that they if there was any inconsistency in the way that somebody is

telling what happened that they could not accept anything that person said. Mr. Ortiz?

PROSPECTIVE JUROR: Two different people can see the same thing two different ways. You have to wait for the facts.

MS. GOLOWA: How but Miss Holston?

PROSPECTIVE JUROR: Sometimes there can be discrepancies in given situations, but the main point of the actual events that there was a car accident and, you know, something caused it in particular, as far as color shirt and so forth, you may be thrown off in the process.

THE COURT: Two minutes, Miss Golowa.

MS. GOLOWA: Miss Harvey, let me ask you this. Do you think how long ago the events happened might effect the way that somebody remembers it?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: And so you knowing that, and hearing that the events that this trial are going to be about happened in November of 2001, which, you know is a few years ago, do you think that you can accept testimony from somebody about what happened three years ago?

PROSPECTIVE JUROR: It depends on the person.

MS. GOLOWA: So you might be able to depending upon your evaluation of the witness?

PROSPECTIVE JUROR: Right.

MS. GOLOWA: And you could evaluate what they're saying and taking into consideration how long ago it happened, you would still be able to listen to what they ever to say?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Anybody feels if somebody is coming in to testify about something from so long ago, that they cannot evaluate that testimony at all? They can not accept it? Miss Maldonado, if the witness sits here and you believe what they say about what happened and I have proven my case beyond a reasonable doubt, is there, the fact that the events happened in 2001, would that -- would you still be able if you believe what they say and prove they're not mistaken or lying, would you be able to return a verdict of guilt?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: How but Miss Vega?

PROSPECTIVE JUROR: Yes.

MS. GOLOWA: Thank you very much.

THE COURT: Thank you, Ms. Golowa.

Mr. Fink, about ten minutes.

MR. FINK: Good afternoon, everybody. Again my name is Jonathan Fink, I represent Mr. Davis and as all of you know by now, this is jury selection. If I ask anything that seems silly or improper, as I said to the

group sitting here earlier, in a short amount of time the prosecutor and myself have to find 12 jurors who can be fair and impartial with regard to this case.

Is there anyone -- I understand, I know some people indicated their concerns about sitting on this case. Is there anyone who has at this point think they can be a good juror? Is there anyone among those of you that feel they can't be, based on something they might have heard at this point. I don't mean to be staring at you Miss Higgins. Do you feel you can be a fair and impartial juror to this point? You said that you can.

PROSPECTIVE JUROR: Still there.

MR. FINK: Now, I want to kind of follow-up. You indicated you were a victim of a robbery some time ago. As you know by now, this case is a robbery case. The fact that you were a victim of a robbery case and I realize the Judge has asked you this, I'm repeating a question asked to you already. Are you sure that given what happened to you as far as the victim of a robbery, are you sure you can be a fair and impartial juror if you're picked on this case?

PROSPECTIVE JUROR: Yes.

MR. FINK: Is it Miss Vega? The same question to you as well, do you feel the same thing?

PROSPECTIVE JUROR: Um-hum.

MR. FINK: I believe it was Miss Holston. You also indicated you were the victim of a robbery, is that right?

PROSPECTIVE JUROR: Yes.

MR. FINK: Given the nature of this case, do you still feel you can be fair and impartial juror if you're picked as a juror?

PROSPECTIVE JUROR: Yes.

MR. FINK: Kind of moving along. There is no question that my client has been accused of a crime. Would everyone agree though the mere fact that someone is accused, does not mean they're guilty of anything.

Miss Harvey, would you agree with that?

PROSPECTIVE JUROR: Yes.

MR. FINK: Do you think that just because he's sitting here at this table with an attorney with counsel that he must have done something wrong?

PROSPECTIVE JUROR: No.

MR. FINK: Is there anyone here who feels differently, Miss Mark, would you agree with Miss Holston, or disagree?

PROSPECTIVE JUROR: I agree with her.

MR. FINK: You haven't heard any evidence in this case. If you had to go deliberate?

PROSPECTIVE JUROR: I have to look at both

sides of the coin.

MR. FINK: Now, you raised something that I kind of addressed with jurors who were sitting here earlier this morning. Do you understand that? I don't have to do anything in this case?

PROSPECTIVE JUROR: That's right.

MR. FINK: Obviously I'm going to -- I'm not going to sit at the table and not say anything. I'm speaking to you right now, but the law says that the burden of proof is with the prosecution. Do you understand that and do you -- will you be able to follow that?

PROSPECTIVE JUROR: Yes.

MR. FINK: Anyone here? Miss Maldonado, do you think I have an obligation to prove my client's innocence?

PROSPECTIVE JUROR: No.

MR. FINK: Will you hold it against my client if I don't testify?

PROSPECTIVE JUROR: No.

MR. FINK: Anyone here who feels differently from that?

PROSPECTIVE JUROR: No.

MR. FINK: Do you feel I have to prove anything in this case?

Voir Dire-Defense

PROSPECTIVE JUROR: No.

MR. FINK: What about, Mr. Allen, do you?

PROSPECTIVE JUROR: I have to see the evidence.

MR. FINK: I'm sorry. You have to see the evidence to prove that he's guilty, whatever it is.

My question is well, -- withdrawn.

PROSPECTIVE JUROR: You go too fast.

MR. FINK: Do you understand that the burden of proof is with the prosecutor? She has to prove my client's guilt beyond a reasonable doubt for you to find him guilty? Will you be able to follow that?

PROSPECTIVE JUROR: Yeah.

MR. FINK: Okay. Is there anyone here who feels that I have to? Mr. Simm, do you feel I would have to prove my client's innocence?

PROSPECTIVE JUROR: I think both sides.

THE COURT: You may not hear both sides. You have to judge the case based on what you do hear. The defendant doesn't have to -- sir, stop for a second. You may not hear both sides. You may only hear one side. Can you judge the case based on what you do hear?

PROSPECTIVE JUROR: No.

THE COURT: Meaning if the defendant doesn't take the stand and testify on his own behalf, you're going to hold it against him?

Voir Dire-Defense

PROSPECTIVE JUROR: No. That's what I mean.

MR. FINK: So, if I were not to call a single witness in this case or even if I didn't ask any questions of the prosecution's witness, you wouldn't hold that against my client?

PROSPECTIVE JUROR: No, because they're innocent until I see evidence against him.

MR. FINK: And if the evidence that you heard was not sufficient, in other words, if the prosecutor proves her case beyond a reasonable doubt, you would have no problem returning a verdict of not guilty, is that correct?

PROSPECTIVE JUROR: Not guilty.

MR. FINK: You indicated, I believe you said that you were the victim of, on a train someone came up to you and people came up to you and hit you?

PROSPECTIVE JUROR: Someone hit me.

MR. FINK: You understand the allegations of this case is a robbery on the train, the A train. Do you understand that?

PROSPECTIVE JUROR: Yes.

MR. FINK: Is there anything about what happened to you and the fact of this case that make you think perhaps you would not be a fair juror for this particular case?

Voir Dire-Defense

PROSPECTIVE JUROR: I don't think so.

MR. FINK: You think you could be fair?

PROSPECTIVE JUROR: Yes.

MR. FINK: Mr. Sarkar?

PROSPECTIVE JUROR: Sarkar.

MR. FINK: Where is it that you live?

PROSPECTIVE JUROR: Greenpoint.

MR. FINK: I think I'm going deaf. The acoustics in here are really bad, I'm sorry.

I couldn't hear what it is that you do?

Do you work? What is it that you do?

PROSPECTIVE JUROR: Sales associate.

MR. FINK: For a company?

PROSPECTIVE JUROR: Lord and Taylor. I sell ladies shoes.

MR. FINK: And do you think you could be fair and impartial if you are picked for this particular case?

PROSPECTIVE JUROR: Little problems.

MR. FINK: You're not sure if you've been able to understand everything that's been said at this point?

PROSPECTIVE JUROR: Yeah.

MR. FINK: Okay. Just a few more minutes, Judge, I'm almost done. Miss Golowa raised a hypothetical, I believe when she was speaking to all of you and she indicated that, you know, suppose there's a

Voir Dire-Defense

car accident and two people have different versions of what they saw, does that mean that the car accident didn't happen? And I believe you indicated no, even though two people can see something different doesn't mean that in this instance the car accident didn't happen.

Let me ask you this, Miss Holston. Suppose one witness was positive that the car drove through a green light when the accident happened and another witness then indicated that the car went through a red light. Do you think that it's fair to say how that accident happened is perhaps in dispute?

PROSPECTIVE JUROR: As far as the cause of the accident?

MR. FINK: Right.

PROSPECTIVE JUROR: That may have some variations, deliberating the cause because if the hit vehicle either ran the red light, it would determine who is at fault and how the accident came about. If there was no red light and it was a green light, it would be a different scenario.

MR. FINK: I'm sorry, I didn't mean to.

PROSPECTIVE JUROR: So I mean that would have to have other things to come into focus to determine whose credibility to be in favor of.

Voir Dire-Defense

MR. FINK: Would you agree with that Mr. Ortiz?

PROSPECTIVE JUROR: Yes.

MR. FINK: Would you agree that if two people give a different explanation how something happened, it raises a question, in fact, as to how that particular incident happened?

PROSPECTIVE JUROR: Yes.

MR. FINK: Miss Higgins, would you agree with that?

PROSPECTIVE JUROR: Yes.

MR. FINK: Is that something that you would take into account as you sit, if you are picked as a juror in this particular case?

PROSPECTIVE JUROR: Yes.

MR. FINK: Mr. Allen, let me ask you this, I don't know if this question was asked of you specifically. I think it might have been by the prosecutor. You're going to hear witnesses, you're going to hear from witnesses in this case, and as I said to the jurors earlier this morning, what they say is evidence but the weight that's given to what they say is something that you're going to have to decide, what kind of factors will you take into account to determine whether or not what something, what someone is saying is more believable or not.

Voir Dire-Defense

PROSPECTIVE JUROR: It's very difficult.

MR. FINK: I know it's not an easy question to answer. If you can't, that's fine.

PROSPECTIVE JUROR: I can't answer.

MR. FINK: Anyone just raise your hands, anyone here who might be able to suggest what kind of factors they would take into account to determine whether or not a witness is being credible or not?

PROSPECTIVE JUROR: How it adds up in my mind.

MR. FINK: If you hear inconsistencies, Miss Mark, is that something that you would take into account in terms of deciding whether or not a person is guilty?

PROSPECTIVE JUROR: Of course.

MR. FINK: Anyone else in terms of things that they would take into account to determine whether or not someone is telling the truth? I know Miss Golowa indicated the person's demeanor. May hear from witnesses, I believe she indicated this, who have a criminal record. Is that something that all of you will take into account when determining whether someone is being credible or not.

Miss Holston, I keep asking you questions. I'm staring at you, I'm sorry.

PROSPECTIVE JUROR: Being that he has a criminal record.

Voir Dire-Defense

MR. FINK: I don't know whether you'll hear from someone with a criminal record or not. If you do hear that a witness has a criminal past, is that something that you would take into account?

PROSPECTIVE JUROR: I mean, it's something to consider but not to --

THE COURT: It's a factor you can use in judging the credibility of a witness?

PROSPECTIVE JUROR: Yes.

MR. FINK: We can agree that the fact that someone has a record doesn't mean they're necessarily lying?

PROSPECTIVE JUROR: No.

MR. FINK: It would be something you take into account.

Thank you all very much.

THE COURT: Ladies and gentlemen, we'll take about a ten minute break while the attorneys make their selections. Some of you are about to become jurors in the case. You haven't heard any evidence yet.

Don't form any opinion concerning the guilt or innocence of this defendant. Anybody tries to talk to you about the case, let me know immediately. Let this group in the box leave first. We will have you back in here, those of you selected, in about ten minutes.

(Whereupon the panel of prospective jurors exit the courtroom.)

(Whereupon a recess was taken.)

THE CLERK: Are the parties ready?

MS. GOLOWA: Yes.

MR. FINK: Yes.

THE CLERK: One through 10, People, for cause?

MS. GOLOWA: Juror number two, Mr. Sarkar, it seems he's having difficulty understanding.

MR. FINK: No objection.

THE COURT: He's removed for cause.

MS. GOLOWA: And then there were a number of jurors that expressed to the Court they could not be fair. Miss Goland, juror number four.

THE COURT: Any objection?

MR. FINK: No.

THE COURT: Removed for cause.

MS. GOLOWA: And juror number six, Mr. Reed, also said that he couldn't be fair.

THE COURT: Any objection?

MR. FINK: No objection.

THE COURT: Removed for cause.

THE CLERK: Defense, one through 10 for cause?

MR. FINK: No one for cause other than those that are gone.

THE CLERK: None for cause.

MR. FINK: No.

THE CLERK: People, one through 10 peremptorily?

MS. GOLOWA: Number three, Mr. Allen. Number seven, Miss Mark.

THE CLERK: Defense, one through 10, perempt?

MR. FINK: Number one, Mr. Simm. That's it.

THE CLERK: Mary Blackmon will be juror number three.

Melissa Maldonado will be number four.

Joanna Vega will be number five.

Elizabeth Higgins will be number six.

People, 10 through 14, for cause?

THE COURT: Eleven through 14.

THE CLERK: Yes, 11 through 14, for cause?

MS. GOLOWA: Well, number 14 stated she couldn't be fair.

THE COURT: Any objection?

MR. FINK: No. She is removed for cause.

THE CLERK: No more.

MS. GOLOWA: No.

THE CLERK: Defense, 11, 12, 13 for cause?

MR. FINK: None for cause.

THE CLERK: People 11, 12, 13, peremptorily?

MS. GOLOWA: Juror number 11, Miss Harvey.

THE CLERK: Any others?

MS. GOLOWA: No.

THE CLERK: Defense, 12 and 13 peremptorily?

MR. FINK: No.

Kim Holston will be number seven. I beg your pardon.

Anthony Ortiz will become number eight.

THE COURT: Just bring in those six, in their proper seats.

We have about 16 left. I propose to have this round use all 16, put additional seats up there.

(The six chosen jurors enter the courtroom)

THE CLERK: Jurors in the box, please rise. Raise your right hand.

(Whereupon the jury was duly sworn by the.

THE COURT: Be seated for a couple of minutes. Ladies and gentleman, you are now sworn jurors in this case. When you leave this room in a few minutes, you're going to be taken to a jury deliberation room, which happens to be on the fourth floor. We already selected two jurors and before 5:00, we should have the rest of the jury, hopefully.

You're going to be excused until ten a.m. on Monday morning. You will get credit for jury service

tomorrow. The Court has other business to conduct. The room that you're going to be taken to is on the fourth floor now. If we can get a room up on this floor, we will get it later. That's the room that has my name on the door. That's the room you will report to Monday morning at ten a.m.. and each time we take a recess and over the luncheon recess, that's the room, all right, back to the jury deliberation room is where you will deliberate upon your verdict at the end of the trial.

You are now sworn jurors in this case. Let me give you some words about your conduct as jurors. Until you get the case to deliberate upon at the end of the trial, you may talk about anything you wish with each other and anyone else, except this case. You can talk about the Yankees and the Mets, the world situation, the stock market. Anything you want, but this case.

You have to wait until you hear all of the evidence and my charge on the law before you can discuss this case with each other or anyone else. Okay.

So we want you to keep an open mind right till the end. Don't form any opinions concerning guilt or innocence of this defendant. Obviously I'll not tell you, not to take the A train. We don't want you visiting any specific locations and making any independent investigation about this case on your own. Judge this

case based on what you hear and see in this courtroom and if anyone attempts to talk to you about this case in any way, shape or form, let me know immediately through the officers.

Attorneys are not going to acknowledge you're existence anymore. They're under an ethical obligation to have no contact with you. Don't feel they're being rude. If they're in the elevator with you and don't talk to you, even look at you, okay. You're excused until ten a.m. promptly on Monday morning. The officer will take you to the jury room now. Please enjoy your weekend.

(The Jury exits the courtroom.)

THE COURT: One of the jurors wanted to talk to me. I prefer to have it conveyed to me by the court officer.

MS. GOLOWA: I apologize. I thought you were done with that. I wanted to point something out. The jurors, the order was mixed up. I think Miss Higgins is supposed to be number six and Miss Holston was number seven.

THE COURT: On Monday we will straighten out the order so it was in the order they were selected. We will take the sheet out and line them up.

Thank you for telling me that. We can bring