UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

KEITH DAVIS,

       Petitioner,

                **MEMORANDUM & ORDER**

   v.              CV 08-4659 (PKC)

JAMES W. WALSH, Superintendent,
Sullivan Correctional Facility,

       Respondent.

------------------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

   Petitioner Keith Davis, appearing *pro se*, seeks a writ of habeas corpus pursuant to 28

U.S.C. § 2254.  In 2004, Davis was convicted of two counts of Robbery in the First Degree

(N.Y. Penal Law § 160.15[2]) and one count of Criminal Possession of a Weapon in the Second

Degree (N.Y. Penal Law. §265.03[2]).  Davis was sentenced to concurrent fifteen-year prison

terms.  Although Davis's petition is somewhat unclear with respect to the grounds upon which he

seeks relief, the Court construes his petition to set forth five grounds: (1) the trial court denied

Davis's double jeopardy rights by declaring a mistrial over his objection, and then retrying him;

(2) Davis's first trial counsel was ineffective; (3) the trial court deprived Davis of his Sixth

Amendment right to a public trial by excluding Davis's four-year-old son from the courtroom;

(4) Davis's new counsel at the re-trial was ineffective; and (5) Davis is actually innocent of the

crimes of which he was convicted.  (Dkt. 14 at 16-41).[1]  For the reasons set forth below, Davis's

petition is denied in its entirety.

---

[1] The Court construes Davis's *pro se* petition "to raise the strongest arguments" it suggests.
*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 472 (2d Cir. 2006) (emphasis omitted); *see*

At Davis's state court trial, it was established that on November 29, 2001 at approximately 4:00 p.m., on the A train in Brooklyn, Davis, acting in concert with Jeremiah Muldrow and Andre Glover, stole various items of personal property from Joseph Davis and Dennis Fitzgerald after threatening (Joseph) Davis, Fitzgerald, and a third person, Norwood Thomas, with a handgun and a knife. Davis was arrested on December 4, 2001. (Dkt. 4 at 2).[2]

Davis's first trial began on January 20, 2004. Two days later, his attorney, Alfred Dorfman, informed the court that he was experiencing a heart condition known as arterial fibrillation. (Dkt. 7, Ex. E at 2). The trial recessed, and Mr. Dorfman visited a cardiologist that day. *Id.* Mr. Dorfman could not attend court the next day, and the trial was adjourned until January 26, 2004. *Id.* Mr. Dorfman came to court on January 26, but again experienced arterial fibrillation, and made arrangements to see his cardiologist that evening. *Id.* After Mr. Dorfman informed the court of this, the following discussion occurred:

> THE COURT: It is the opinion of the Court that you will not be able to proceed to the conclusion of this trial which will be at least to the end of this week and with your consent I will declare a mistrial.
>
> MR. DORFMAN: Consent.
>
> THE COURT: What I will do is adjourn this matter for about three or four weeks to see if you are able to continue with the trial physically, if not the Court will assign a new attorney or consider whatever applications might be made at that time.

---

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (requiring courts to hold *pro se* pleadings to less stringent standards). At the same time, because Davis was convicted, the Court recites the relevant facts in the light most favorable to the verdict. *See Garbutt v. Conway*, 668 F.3d 79, 80 (2d. Cir. 2012); *see also Walker v. Graham*, 955 F. Supp.2d 92, 98 n.1 (E.D.N.Y. 2013).

[2] Joseph Davis and Norwood Thomas each identified Davis in a line-up. (*Id.*; Dkt. 11-2 at ECF 16.) "ECF" refers to the pagination of the electronic docketing system as opposed to the document's internal pagination.

The both of you agree on a potential date.

MR. DORFMAN: *Judge, for the record the defendant wishes me to inform you that he wishes to go pro se.*

THE COURT: *I will entertain that application on the new trial date.*

*Id.* at 2–3 (emphasis added). The judge then declared a mistrial, adjourned the case until February 23, 2004, and discharged the jury. *Id.* at 3.[3]

Davis was assigned a new lawyer for the retrial, at which Davis was convicted of two counts of Robbery in the First Degree and one count of Criminal Possession of a Weapon in the Second Degree. *People v. Davis*, 43 A.D.3d 448, 449 (2d Dep't 2007). On October 28, 2004, he was sentenced as a persistent violent felony offender to concurrent prison terms of twenty years to life for the robbery counts and fifteen years to life for the weapon possession count. *Id.*

In December 2006, Davis filed a brief with the Appellate Division, Second Department ("Appellate Division") raising four claims: (1) his right against double jeopardy was violated when the trial court declared a mistrial despite his request to continue the first trial *pro se*; (2) his counsel for the first trial, Mr. Dorfman, provided ineffective assistance by failing to clarify and emphasize Davis's desire  to object to the mistrial and proceed *pro se* with the first trial, and for operating under a conflict of interest due to Mr. Dorfman's need for immediate medical attention; (3) the trial court deprived Davis of his Sixth Amendment right to a public trial when it excluded his four-year-old son from the courtroom; and (4) Davis was unlawfully adjudicated and sentenced as a persistent violent felony offender. (*See* Dkt. 1 at 2; *see also* Dkt. 4 at 2-3). On August 14, 2007, the Appellate Division denied Davis's first three claims but upheld the fourth, vacating the sentence and remitting the case to the trial court for resentencing. *People v.*

---

[3] Davis's desire to "go *pro se*" was not addressed again until his sentencing hearing after the retrial, when Davis declared that the trial court had violated his rights by not allowing him to proceed *pro se* at the first trial. (Dkt. 8-5, Ex. J at 8).

*Davis*, 840 N.Y.S.2d 630 (2d Dep't 2007). Davis was resentenced as a second felony offender on September 25, 2007 to concurrent prison terms of fifteen years for each of the two robbery counts and fifteen years on the weapon possession count. (Dkt. 4 at 3). The New York Court of Appeals denied Davis's leave application on November 7, 2007 (*People v. Davis*, 9 N.Y.3d 990 (2007)), and denied his application for reconsideration on February 20, 2008 (*People v. Davis*, 10 N.Y.3d 763 (2008)).

Davis timely filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on November 7, 2008. (Dkt. 1). By letter dated March 22, 2009, Davis asked the Court to hold his petition in abeyance so that he could exhaust additional claims in state court. (Dkt. 6). On June 18, 2009, Davis filed a motion, pursuant to New York Criminal Procedure Law § 440.10, in Supreme Court, Kings County ("Supreme Court") to vacate his conviction ("440 Motion"), raising two claims. (Dkt. 11 at 2). First, he argued that his attorney at the re-trial, Jonathan Fink, provided ineffective assistance of counsel by failing to (1) interview co-defendant Andre Glover or call him as a defense witness; (2) offer into evidence co-defendant Jeremiah Muldrow's pretrial statement to the police as a statement against penal interest; and (3) interview or call as a trial witness, Sam Johnson, who had observed some of the events during the shooting. *Id.* Second, Davis raised a freestanding claim of actual innocence. *Id.* On January 28, 2010, the Supreme Court denied Davis's 440 Motion. *Id.* He applied to the Appellate Division for leave to appeal the Supreme Court's denial, but that application was denied on December 22, 2010. *Id* at 3. Davis then amended his habeas petition to include the claims denied by the Supreme Court. (Dkt. 10).

*DISCUSSION*

I.      *Standard of Review under 28 U.S.C. § 2254*

Section 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  "A state court 'adjudicates' a petitioner's federal constitutional claims 'on the merits' when 'it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment.'"  *Norde v. Keane,* 294 F.3d 401, 410 (2d Cir. 2002) (quoting *Sellan v. Kuhlman,* 261 F.3d 303, 312 (2d Cir. 2001)).

"Clearly established federal law 'refers to the holdings, as opposed to the dicta, of the [United States] Supreme Court's decisions as of the time of the relevant state-court decision.'"  *Howard v. Walker,* 406 F.3d 114, 122 (2d Cir. 2005) (quoting *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2002)).  A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" a United States Supreme Court case, or it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent."  *Penry v. Johnson,* 532 U.S. 782, 792 (2001) (internal quotation marks and citations omitted).  A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  *Id.* (internal quotation marks and citation omitted).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). The Second Circuit has added that, while "[s]ome increment of incorrectness beyond error is required[,] . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." *Id.* (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)). Finally, "'if the federal claim was not adjudicated on the merits, AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed *de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)).

II. *Davis's Double Jeopardy Claim*

The Double Jeopardy Clause of the United States Constitution protects an accused against multiple prosecutions for the same offense. *See* U.S. Const. amend. V, XIV; *United States v. Dinitz*, 424 U.S. 600, 606 (1976). "[T]he critical double jeopardy inquiry in the mistrial context is whether the defendant sought or consented to the mistrial." *United States v. Rivera*, 802 F.2d 593, 397 (2d Cir. 1986). Where the court declares a mistrial without the defendant's consent, a new trial is barred unless there was a manifest necessity for the mistrial. *See Oregon v. Kennedy*, 456 U.S. 667, 672 (1982). Where the defendant consents to the mistrial, however, he may be retried unless the judge or prosecutor intentionally provoked the defendant to consent to the mistrial. *See id.* at 673-80; *see also Rivera*, 802 F.2d at 397.

The key issue with respect to Davis's double jeopardy claim is whether he consented to the mistrial. If so, his double jeopardy rights were not violated upon his retrial. Davis argues that he never consented to the mistrial and that defense counsel's statement, "Judge, for the record the defendant wishes me to inform you that he wishes to go *pro se*", represented a manifestation of Davis's lack of consent. (*See* Dkt. 14 at 16-17, 21-22).[4] Therefore, Davis argues, the court declared a mistrial without his consent and, since there was no manifest necessity for the mistrial, the new trial was barred. (Dkt. 14 at 18-27). The Appellate Division held that Davis's retrial was not barred because the defense counsel, Mr. Dorfman, consented to the mistrial. *Davis*, 43 A.D. at 449 ("The defendant's personal consent to the mistrial was not required, and the court was not required to inquire whether the defense counsel had consulted with the defendant.") (citations omitted). As discussed below, this ruling was not contrary to, nor an unreasonable application of, clearly established federal law.

### A. No Clearly Established Right of Personal Consent to a Mistrial

The United States Supreme Court has never held that a criminal defendant has the constitutional right to personally decide whether to consent to a mistrial. The Court has recognized only four fundamental decisions regarding a case that a criminal defendant must make personally: whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983); *see also Wainwright v. Sykes,* 433 U.S. 72, 93 n. 1 (1977) (Burger, C.J., concurring).[5] Therefore, the state court's treatment of Mr.

---

[4] Davis is not claiming that the judge or prosecutor intentionally provoked him to consent to the mistrial.

[5] Furthermore, the permissibility of a retrial following a mistrial does not depend on a knowing, voluntary, and intelligent waiver of a constitutional right. *Dinitz*, 424 U.S. at 609 n. 11. The Sixth, Seventh, and Eighth Circuits have inferred from these cases that, aside from the four fundamental decisions enumerated by the United States Supreme Court in *Jones,* 463 U.S. at

Dorfman's consent as binding on Davis was not contrary to, nor an unreasonable application of, clearly established federal law.

### B. Petitioner Waived Any Right of Personal Consent to a Mistrial

Even assuming that a criminal defendant has a right of personal consent to a mistrial, Davis waived that right through his silence. "A fundamental choice over which the defendant has the ultimate decision can be knowingly and voluntarily waived if, by his or her silence, the defendant apparently acquiesces to the waiver." *Washington*, 198 F.3d at 724.

Despite initially making an unclear statement through his attorney about "go[ing] pro se," Davis remained silent when the court declared a mistrial and then ordered a retrial. Davis's silence, under these circumstances, amounted to a waiver of any right to personally object to the declaration of a mistrial, and instead led the trial court to reasonably interpret Davis's request to "go *pro se*" as pertaining to the retrial, not the first trial. Mr. Dorfman's statement, in connection Davis's post-trial proceedings, that he remembers that Davis wanted to continue the first trial *pro se* (Dkt. 15, Ex. B at ECF 5)[6] is insufficient, given that Davis had the opportunity to clearly state his objection to the mistrial declaration in court, but did not do so until the sentencing hearing, after the retrial, nine months later. "A self-serving post-trial objection 'just is too facile a tactic to succeed.'" *Boyd*, 86 F.3d at 723 (quoting *Underwood v. Clark,* 939 F.2d 473, 476 (7th

---

751, all other trial decisions are strategic decisions for defense counsel to make unilaterally, including the choice of whether to consent to a mistrial. *Watkins v. Kassulke*, 90 F.3d 138, 141-43 (6th Cir. 1996); *United States v. Boyd*, 86 F.3d 719 (7th Cir. 1996); *United States v. Washington,* 198 F.3d 721, 723-24 (8th Cir. 1999). Within those circuits, Mr. Dorfman's consent to the mistrial would be binding on Davis. Neither the United States Supreme Court nor the Second Circuit has definitively established this principle, however.

[6] Mr. Dorfman also stated in his affidavit that because the events at issue "occured [sic] over two years ago, I cannot swear to it with certainty. I do not recall what the court stated in response to the defendants [sic] desire to go pro se." *Id.*

Cir.1991)).  Thus, even if Davis had the constitutional right to personally decide whether to consent to the mistrial, he failed to do so.[7]

III.    *Ineffective Assistance of Counsel at Davis's First Trial*

Construing Davis's petition in the manner most favorable to him[8], he argues that Mr. Dorfman provided ineffective assistance of counsel at Davis's first trial by: (1) failing to clarify and emphasize Davis's desire to object to the mistrial and proceed *pro se* with the first trial and (2) operating under a conflict of interest due to Mr. Dorfman's desire to obtain immediate medical assistance.  The Court addresses each of these arguments, applying AEDPA's deferential standard of review.[9]

  A.  *Alleged Failure to Clarify and Emphasize Davis's Desire to Proceed Pro Se*

  1.  *Legal Standard*

Davis bears the burden of persuasion to demonstrate that his trial counsel's performance was so inadequate as to violate the Sixth Amendment right to assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668, 696 (1984).  To prevail, Davis must show both that (1) "counsel's representation fell below an objective standard of reasonableness", and (2) "that there

---

[7]  Although the Court need not reach this issue, it finds that, even if Davis had effectively communicated his objection to a mistrial, the mistrial was a "manifest necessity", given the suddenness of Mr. Dorfman's unavailability and the lack of opportunity for Davis to prepare and continue the trial *pro se*.

[8] *See Erickson*, 551 U.S. at 94; *see also Triestman*, 470 F.3d at 472.

[9] While the state court did not explicitly address Davis's ineffective assistance of counsel claim, we presume the court denied it on the merits in the absence of any indication or state-law procedural principles to the contrary.  *See Harrington v. Richter*, -- U.S. --, 131 S. Ct. 770, 784–85 (2011) (citing *Harris v. Reed,* 489 U.S. 255, 265 (1989)) ("[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.")

is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88.

The first prong requires a showing that counsel's performance was deficient. Constitutionally effective counsel embraces a "wide range of professionally competent assistance," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Greiner v. Wells*, 417 F.3d 305, 319 (2d Cir. 2005) (quoting *Strickland*, 466 U.S. at 690). The Court examines the reasonableness of counsel's actions under all of the circumstances, keeping in mind that a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 319 (quoting *Rompilla v. Beard*, 545 U.S. 374, 389 (2005)).

The second prong focuses on prejudice to the defendant. The defendant is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" means that the errors were of a magnitude such that it "undermines confidence in the outcome" of the proceeding. *Pavel v. Hollins*, 261 F.3d 210, 216 (2d Cir. 2001) (quoting *Strickland*, 466 U.S. at 694). A habeas petitioner bears the burden of establishing both deficient performance and prejudice. *United States v. Birkin*, 366 F.3d 95, 100 (2d Cir. 2004).

AEDPA requires federal courts on habeas review to grant state courts substantial "deference and latitude" when considering an ineffective assistance of counsel claim. *Harrington*, 131 S. Ct. at 785. Indeed, review of a state court's rejection of an ineffective assistance claim is "doubly deferential" and is subject to a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 124 (2009).

To obtain federal habeas relief on a claim of ineffective assistance that previously was denied by a state court either on direct appeal or through collateral attack, Davis must do more than convince the Court that, in its independent judgment, the state court incorrectly applied the standard for ineffective assistance of counsel set forth in *Strickland*. *Bell v. Cone*, 535 U.S. 685, 699 (2002) (citing *Williams v. Taylor*, 529 U.S. 362, 365 (2000)). Rather, Davis must demonstrate that the state court applied *Strickland* in an objectively unreasonable manner. *Williams*, 529 U.S. at 365; *Sellan*, 261 F.3d at 315 (holding that the unreasonable manner standard requires "[s]ome increment of incorrectness beyond error", but "the increment need not be great; otherwise habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.") (citing *Francis S.*, 221 F.3d at 111).

### 2. *Davis's First Trial Counsel Was Not Ineffective*

Davis's argument with respect to Mr. Dorfman's alleged ineffectiveness for not clarifying and emphasizing Davis's desire to proceed *pro se* with the first trial fails to satisfy either prong of the *Strickland* test. Davis has failed to establish that Mr. Dorfman's performance was deficient because there is insufficient evidence in the record that Davis intended his request to "go *pro se*" to be interpreted as an alternative to a mistrial. The fact that Mr. Dorfman later recalled that Davis wanted to represent himself during the first trial is contradicted by Davis's own failure to object to the mistrial until *after* the re-trial. Furthermore, even if Davis had, in fact, made clear to Mr. Dorfman his desire to object to the mistrial, Mr. Dorfman was not required to follow his client's wishes, since there is no clearly established principle in federal law that the defendant must personally consent to a mistrial. *Supra* at 7-8. Indeed, it was well within the scope of reasonable decisions for Mr. Dorfman to have concluded that Davis should not proceed *pro se* during the first trial, especially given Davis's lack of opportunity to prepare, and

that the better strategy was to consent to a mistrial so that Davis could either be represented by new counsel or represent himself after having prepared at a retrial.

As importantly, Davis has also failed to show that Mr. Dorfman's allegedly deficient performance caused him prejudice. Even if Davis had been allowed to continue the first trial *pro se*, Davis points to no evidence, and the Court finds none, suggesting a reasonable probability that the result of the trial would have been different, so as to undermine confidence in the outcome of the proceeding. *See Strickland,* 466 U.S. at 694; *see also Pavel*, 261 F.3d at 216. In fact, given the suddenness of Mr. Dorfman's unavailability, it is much more likely that Davis would have been at a significant disadvantage had he represented himself during the first trial.

Accordingly, Davis has failed to show that the Appellate Division applied *Strickland* in an objectively unreasonable manner in denying his ineffective assistance of counsel claim with respect his purported request to "go *pro se*". *See Williams*, 529 U.S. at 365; see also *Sellan*, 61 F.3d at 314–15 (2d Cir. 2001).

## B. *Trial Counsel's Alleged Conflict of Interest*

To succeed on a conflict of interest claim, Davis must show that his lawyer "actively represented conflicting interests" and that "an actual conflict of interest adversely affected his lawyer's performance." *Strickland*, 466 U.S. at 692 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345-350 (1980)). If Davis can prove this, prejudice is presumed. *Id.*

Davis claims that Mr. Dorfman had a conflict of interest at the time of the mistrial declaration because he wanted to be relieved of his obligation to defend Davis as soon as possible in order to obtain medical treatment, and that Mr. Dorfman thus chose not to press Davis's objection to the mistrial declaration. (Dkt. 14 at 27-29). This argument fails for two reasons. First, there is no evidence that Mr. Dorfman's access to medical treatment was, in any

way, contingent upon consenting to the mistrial. Mr. Dorfman had already made a medical appointment for later in the day when this issue first arose, and there is no indication that he would have been unable to make the appointment if he had pressed Davis's purported request not to declare a mistrial and to let Davis proceed *pro se*. (Dkt. 7, Ex. E at 2). Second, Mr. Dorfman's interest in receiving medical attention did not conflict with Davis's desire to proceed *pro se* with the first trial. Rather, Mr. Dorfman's and Davis's interests were aligned on this issue. Had the court allowed Davis to proceed *pro se* with the first trial, Mr. Dorfman would have been relieved and free to obtain the medical care he needed. Thus, Davis cannot show that the state court applied *Strickland* in an unreasonable manner by denying his ineffective assistance of counsel claim based on Mr. Dorfman's alleged conflict of interest.

IV.     *Alleged Denial of Davis's Right to a Public Trial*

After the lunch break on the third day of the retrial, Davis brought his four-year-old son into the courtroom. (Dkt. 8-1, Ex. G at 263). The court excluded the child from the courtroom over defense counsel's timely objection, saying it was inappropriate for such a young child to witness a criminal case. *Id.* at 263–264. The court noted that it had excluded the child during the first trial and had temporarily remanded Davis when he refused to take the child to the courthouse's daycare center. *Id.* at 263. Davis argues that this exclusion violated his Sixth Amendment right to a public trial. (Dkt. 1 at 7). The Appellate Division ruled that it did not. *Davis*, 43 A.D.3d at 449.

The Sixth Amendment guarantees every citizen's right to a public trial. U.S. Const. amends. VI, XIV. This right is not absolute, but a presumption of openness exists. *See Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 509-10 (1984). To overcome this presumption, the party seeking to close the courtroom "must advance an overriding interest that

is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller v. Georgia*, 467 U.S. 39, 48 (1984). Where the courtroom is only partially closed, only a "substantial reason" supporting closure, not an "overriding interest", must be shown. *United States v. Smith*, 426 F.3d 567, 571 (2d Cir. 2005). The exclusion of only certain spectators constitutes a partial closure. *See, e.g., English v. Artuz*, 164 F.3d 105, 109 (2d Cir. 1998) (characterizing sole exclusion of defendant's family as partial closure).[10]

The trial court's exclusion of Davis's four-year-old son passes the test set forth in *Waller*, 467 U.S. at 48, for overcoming the Sixth Amendment presumption of openness. The inappropriateness of exposing a young child to a criminal trial is a substantial reason supporting the child's exclusion. *See Covington v. Lord*, 275 F. Supp. 2d 352, 358 (E.D.N.Y. 2003) (preventing defendant's six-year-old son from exposure to certain testimony in a criminal trial was a substantial reason supporting exclusion of him from the courtroom), *aff'd*, 111 Fed. App'x. 647 (2d Cir. 2004). Only the child was excluded, so the closure was no broader than necessary. *See Smith*, 426 F.3d at 571 (the number of spectators barred from the courtroom is relevant to determining whether a closure is broad or narrow). The trial court had no duty to consider reasonable alternatives to excluding the child because Davis did not propose any. *See Gibbons*, 555 F.3d at 117 ("[the court] assume[s] that, for purposes of a defendant's after-the-fact effort to set aside his conviction on the basis of exclusion of the public, the defendant may not rely on possible alternatives that no one suggested at the time.") The court also made findings adequate to support the exclusion. The court declared that "this is no place for a young child to be sitting

---

[10] Heightened scrutiny does not apply in a habeas case, even when the person excluded is the defendant's family member. *See Gibbons v. Savage*, 555 F.3d 112, 116 (2d Cir. 2009).

in on a criminal court case" and that "it's inappropriate". (Dkt. 8-1, Exhibit G at 264). Therefore, the trial court satisfied all four elements of the *Waller* test, and the exclusion of Davis's four-year-old son was justified.

Even if the trial court had failed the *Waller* test, the exclusion was trivial and does not require overturning the state conviction. In evaluating whether a closure is trivial, the Court looks "to the values the [United States] Supreme Court explained were furthered by the public trial guarantee, focusing on (1) ensuring a fair trial, (2) reminding the prosecutor and judge of their responsibility to the accused and the importance of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury . . . .Essentially, [the court's] analysis turns on whether the conduct at issue 'subverts the values the drafters of the Sixth Amendment sought to protect.'" *Gibbons*, 555 F.3d at 121 (quoting *Smith v. Hollins,* 448 F.3d 533, 540 (2d Cir. 2006)). The exclusion of Davis's infant son did not subvert any of these values and was thus trivial. *See U.S. v. Perry*, 479 F.3d 885, 890–891 (D.C. Cir. 2007) (exclusion of defendant's eight-year-old son was trivial because the child's presence would not ensure that the judge and prosecutor would carry out their duties responsibly, discourage perjury,nor encourage a witness to come forward).

For the foregoing reasons, the Appellate Division did not rule contrary to, or unreasonably apply, clearly established federal law by holding that the trial court properly excluded Davis's four-year-old son from the courtroom.

V.      *Ineffective Assistance of Counsel at Davis's Retrial*

Davis claims that his counsel at the retrial, Jonathan Fink, was ineffective for failing to (1) interview co-defendant Andre Glover or call him as a witness, (2) offer into evidence co-defendant Jeremiah Muldrow's pretrial statement to the police as a statement against penal

interest, and (3) interview a potential witness, Sam Johnson. The Supreme Court denied Davis a hearing on this claim because he had failed to establish that there were facts in addition to the record which would entitle him to relief and, additionally, because he had failed to raise the claim during the appeals process. (Dkt. 11-2, Ex. Y at 2.)[11]

### A. Adequate and Independent State Procedural Ground

It is well-settled that a petitioner's federal claim may be procedurally barred from federal habeas review if the state court resolved the issue on an "adequate and independent" state procedural ground. *See Coleman v. Thompson*, 501 U.S. 722, 729–33 (1991); *Valesquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). A procedural rule is considered adequate if it is "firmly established and regularly followed by the state in question." *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999). To be independent, the "state court must actually have relied on the procedural bar as an independent basis for its disposition of the case" by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 261–62, 263 (1989) (internal quotations omitted). Here, the Supreme Court's determination that Davis's claim that he received ineffective assistance of counsel at his retrial was procedurally barred meets those requirements, and constitutes an adequate and independent state procedural ground for resolution of the issue in state court.

First, a state procedural ground is "adequate" if the court relied on a state rule that was "firmly established and regularly followed" in the state's courts at the time of the decision. *Coleman*, 501 U.S. at 729-33. Here, the Supreme Court relied on two New York rules: N.Y.

---

[11] The Supreme Court stated: "The defendant bases his claim of ineffective assistance of counsel on grounds amounting to trial strategy. In order to even obtain a hearing on this issue the defendant must establish that there are facts in addition to the record which would entitle him to this relief. No such facts are presented. <u>People v. [Satterfield],</u> 66 N.Y.2d 796 (1985); CPL 440.30(4)(a). Further, since the defendant cannot establish non-record facts, these are basically issues which could have been raised during the appeals process. CPL 440.10(2)(c)." (*Id.*).

Crim. Proc. Law § 440.30(4)(a) (McKinney 2012) and N.Y. Crim. Proc. Law § 440.10(2)(c) (McKinney 2012).[12]  (*See* Dkt. 11-2, Ex. Y at 2).  Both statutory provisions have been "firmly established and regularly followed" in New York's courts since well before the time of the Supreme Court decision in this case.  *See, e.g., People v. Wilson*, 824 N.Y.S.2d 770 (Sup. Ct. 2006) (hearing on defendant's motion denied pursuant to § 440.30(4)(a)); *People v. Washington*, 836 N.Y.S. 2d 488 at *2 (Sup. Ct. 2006) (defendant's ineffective assistance of counsel claim barred from review pursuant to § 440.10(2)(c)).  Thus, the first prong of the test set forth in *Coleman* is satisfied.

Second, the Supreme Court's ruling that Davis's claim was procedurally barred by § 440.30(4)(a) and § 440.10(2)(c) was "independent" because the Supreme Court expressly relied on both rules in denying Davis's motion to vacate his conviction.  *See supra* at 16 n. 11.  Thus, the second prong of the *Coleman* test is satisfied.

Because the Supreme Court's denial of Davis's claim that he received ineffective assistance of counsel at his retrial constitutes an "adequate and independent" state procedural ground, federal habeas review is foreclosed.  Notwithstanding Davis's failure to establish that there are facts in addition to the record which would entitle him to relief or to raise his ineffective assistance of counsel claim during the appeals process, the Court can still review the merits of his claim if Davis demonstrates both cause for these failures and prejudice resulting

---

[12] § 440.30(4)(a) states that a court may deny a motion to vacate a judgment without conducting a hearing if "[t]he moving papers do not allege any ground constituting legal basis for the motion". § 440.10(2)(c) states that a court must deny a motion to vacate a judgment when, "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him".

therefrom, or if he demonstrates that the failure to consider the claim would result in a miscarriage of justice. *See Coleman*, 501 U.S. at 750.

Davis does not attempt to explain his failure to establish additional facts that would entitle him to relief or to raise his ineffective assistance of counsel claim during the appeals process, and therefore has failed to demonstrate cause or prejudice. Davis also does not set forth any basis to conclude that a miscarriage of justice would occur were the Court not to review his claim on the merits. *See St. Helen of Senkowski*, 374 F.3d 181, 183-84 (2d Cir. 2004) (citing *Bousley v. United States*, 523 U.S. 614 (1998)). Therefore, there is no good cause to excuse Davis's failures, and the Court is barred from reaching the merits of this claim.

### B. Merits of Davis's Ineffective Assistance of Retrial Counsel Claim

Even if the Court were permitted to address the merits of Davis's ineffectiveness claim as to his retrial counsel, Jonathan Fink, it would fail on the merits.

#### 1. Failure to interview Andre Glover or call him as a witness

Davis argues that Glover would have testified that Muldrow committed the robbery alone and that neither Glover nor Davis participated in the robbery. (Dkt. 14 at 33). Davis claims this testimony would have corroborated Eboni Jamison's[13] testimony that Davis did not participate in the robbery. (Dkt. 11-2 at ECF 25-28).

Davis has failed to establish, however, that Mr. Fink's failure to interview Andre Glover or call him as a witness was not a reasonable tactical decision. "A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel." *United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002); *see also United States v.*

---

[13] Although Respondent spells this individual's last name as "Jameson" (*see*, *e.g.*, Dkt. 11 at ECF 10), the Court adopts Davis's spelling of "Jamison" (*see* Dkt. 11-2 at ECF 9).

*Best*, 219 F.3d 192, 201 (2d Cir. 2000) (counsel's decision as to 'whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation'" (quoting *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997)).    Mr. Fink states that he had three strategic reasons for not calling Glover as a defense witness: (1) Glover's testimony would have been cumulative; (2) Glover's testimony probably would have contradicted Jamison's testimony; and (3) Glover had credibility problems.  (Dkt. 11-2, Ex. CC at ¶ 5).[14]  Davis has not shown that any of these reasons are invalid.  At a minimum, the record demonstrates that Mr. Fink considered, but decided against, calling Glover as a witness.  Therefore, Mr. Fink's decision was not an unreasonable tactical decision, and Davis's argument fails to satisfy the *Strickland* test.

> ### 2. *Failure to offer into evidence Jeremiah Muldrow's pretrial statement to the police*

This argument fails both prongs of the *Strickland* test.  Muldrow told the detective that he had robbed the "rapper" at gunpoint.  (Dkt. 11-2, Ex. V at Ex. C).  Muldrow did not tell the detective that Davis had not participated in the robbery, or anything about Davis, in fact.  *Id.* Therefore, Muldrow's statement did not show that Davis had not participated in the robbery, and Mr. Fink's failure to offer the statement into evidence was not unreasonable.[15]  Nor has Davis demonstrated a reasonable probability that had Muldrow's statement been introduced, the result of the trial would have been different.

---

[14] Indeed, given that Glover was charged as a co-conspirator in the robbery, Mr. Fink reasonably assessed the potential for Glover's testimony to be viewed by the jury as self-serving and not credible, and as potentially diluting Jamison's testimony.  In addition, because Glover admitted to getting "into an incident" with one of the victims a year before the robbery and wanting to beat up that victim (Dkt. 11-2 at 40), his testimony could have been used to undermine Mr. Fink's argument at trial that Mulgrew was the only one with a motive to rob the victims.

[15] Davis argues that Muldrew's statement would have been admissible as a statement against penal interest under state law because Muldrow had fled and was therefore unavailable.  (Dkt. 11-2 at ECF 28-31).

### 3. Failure to interview Sam Johnson

A police report taken at the scene shortly after the crime recounts a police interview with a witness named Sam Johnson, who stated that "he saw a smaller caliber firearm, people started moving towards end of the car." (Dkt. 11-2, Ex. V at Ex. E). Mr. Fink states in his affirmation that he had looked at the police report before the trial and asked the assigned Assistant District Attorney for Sam Johnson's contact information, but never received it and never followed up. (Dkt. 11-2, Ex. CC at ¶ 5). Davis claims that further information from Johnson might have supported Davis's claim that only one person committed the robbery and that Davis was on the other end of the train when it took place. (Dkt. 11-2, Ex. V at 24-28).

This argument fails both prongs of the *Strickland* test as well. The information contained in the report says nothing about the number of perpetrators and does not indicate that Davis was among the people moving toward the other end of the car. There is no evidence suggesting that interviewing Johnson would have uncovered information that would have exculpated Davis. Thus, there is no basis for finding that it was unreasonable for Mr. Fink not to interview Johnson or that there is a reasonable probability that the result of the trial would have been different had Mr. Fink interviewed Johnson.

The Court accordingly denies Davis's claim that Mr. Fink provided him with ineffective assistance of counsel with respect to the second trial.

## VI. Actual Innocence

Finally, Davis claims that he is actually innocent. (Dkt. 14 at 41; Dkt. 11-3 at ECF 42). The Supreme Court denied this claim on the merits. (Dkt. 11-2, Ex. Y at 3). Thus, AEDPA's deferential standard of review applies.

The United States Supreme Court has yet to hold that there is a freestanding federal constitutional claim of actual innocence. *See District Attorney's Office v. Osborne* ("*Osborne*"), 557 U.S. 52, 71 (2009) ("Whether [a federal right to be released upon proof of actual innocence] exists is an open question. We have struggled with it over the years, in some cases assuming, *arguendo,* that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet.") (citations omitted); *House v. Bell,* 547 U.S. 518, 554-55 (2006) (declining to decide whether there exists a freestanding actual innocence claim left open in *Herrera v. Collins*, 506 U.S. 390 (1993)); *Herrera*, 506 U.S. at 404 (finding that habeas petitioner who was not seeking to excuse procedural default was not entitled to relief based on actual innocence claim); *cf. McQuiggin v. Perkins*, -- U.S. --, 133 S.Ct. 1924, 1928 (2013) ("We hold that actual innocence, if proved, serves as a gateway through which a [habeas] petitioner may pass whether the impediment is a procedural bar . . . [or] expiration of the statute of limitations"). Davis, therefore, cannot show that the state Supreme Court's decision denying Davis's actual innocence claim was contrary to, or an unreasonable application of, *clearly* established federal law. *See Carey v. Musladin*, 549 U.S. 70, 72–77 (2006) (denying habeas relief under 28 U.S.C. § 2254(d)(1) because whether spectator conduct in wearing buttons displaying murder victim's image denied defendant the constitutional right to a fair trial was an open question in United States Supreme Court jurisprudence).

Even assuming *arguendo* the existence of a freestanding federal claim of actual innocence, the United States Supreme Court has suggested that the threshold showing for such a claim would be "extraordinarily high". *Herrera*, 506 U.S. at 417; *see Osborne*, 557 U.S. at 71 (noting high standard that actual innocence claimants would have to meet). Here, in support of his actual innocence claim, Davis merely marshals the same arguments about his trial counsel's

failure to introduce statements or testimony from co-defendant Jeremiah Muldrow and the potential witness Sam Johnson, arguing at most that he "believes" this testimony would "exonerate" him. (Dkt. 11-3 at 42). This showing falls woefully short of the applicable threshold. *See Herrera*, 506 U.S. at 417 (finding petitioner's showing fell far short of the "extraordinarily high" threshold applicable to an actual innocence claim). Accordingly, the Court denies Davis's request for relief based on a claim that he is actually innocent.

## CONCLUSION

For the reasons set forth above, Davis's application for a writ of habeas corpus pursuant to 28 U.S.C. §2254 is denied. Because Petitioner has not made a substantial showing of the denial of any constitutional right, no certificate of appealability will be issued. 28 U.S.C. § 2253(c); *see Slack v. McDaniel*, 529 U.S. 473 (2005). The Court also certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45 (1962). The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED:

 /s/ Pamela K. Chen
PAMELA K. CHEN
United States District Judge

Dated: April 21, 2015
        Brooklyn, New York